JASON M. FRIERSON
United States Attorney
District of Nevada
Nevada Bar No. 7709

PATRICK A. ROSE
Assistant United States Attorney
Nevada Bar No. 5109
501 Las Vegas Blvd. So., Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Patrick.Rose@usdoj.gov

*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL ERWINE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, CHURCHILL COUNTY, a political subdivision of the State of Nevada, CHURCHILL COUNTY SHERIFF BENJAMIN TROTTER; UNITED STATES OF AMERICA, ZACHARY WESTBROOK, JON LEONARD, MICHEL HALL, GENE BURK; and DOES I through X inclusive,<br><br>Defendants. | Case No. 3:24-cv-00045-MMD-CSD<br><br>**United States' Motion to Dismiss First Amended Complaint** |

Pursuant to Federal Rule of Civil Procedure 12(b)(1), (6), Defendant United States moves for an order dismissing it from the First Amended Complaint, ECF No. 59. This motion is supported by the accompanying points and authorities, as well as all papers and pleadings on file.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  Introduction

### A.  Nature of the Claims and Grounds for this Motion

Plaintiff Michael Erwine ("Erwine") was fired by the Churchill County Sheriff's Department in October 2016. First Am. Compl., ECF No. 1, ¶ 5. He was fired by the Washoe Tribe of Nevada and California ("Tribe") in March 2022. First Am. Compl. ¶¶ 108, 185. Based on the firing by the Tribe, Erwine asserts against the United States two claims for relief: tortious discharge of employment (sixth claim for relief); and bad faith discharge of employment (seventh claim for relief). First Am. Compl. at 41–45. Plaintiff failed to exhaust administrative remedies for these state law tort claims under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2401(b), 2402, 2671-2680 ("FTCA"). That failure deprives this Court of subject matter jurisdiction to hear the claims. Additionally, the well-pled factual allegations fail to establish plausible claims for tortious discharge and bad faith discharge. Furthermore, Erwine includes prayers for certain types of relief that are not available under the FTCA. These grounds are further explained below, and the Court should dismiss the United States from this action.

### B.  The FTCA, the United States, and the Washoe Tribe

Subject to certain exceptions and conditions, the FTCA waives the United States' sovereign immunity such that the United States may be held liable for tortious acts of its employees in the same manner and to the same extent as a private individual under like circumstances, according to the law of the state where the act or omission occurred. *See Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015); *McSwain v. United States*, No. 2:15-cv-01321-GMN-GWF, 2017 WL 901722, at *2 (D. Nev. Mar. 7, 2017) (citations omitted); 28 U.S.C. §§ 2671, 2674. The extent of the United States' liability under the FTCA is determined by the substantive tort law of the state where the act or omission occurred. *Clemons v. United States*, No. 2:19-cv-248-JCM-EJY, 2023 WL 9017156, at *8 (D. Nev. Dec. 28, 2023) (citations include *Delta Savings Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001)).

Congress extended the FTCA's waiver of the United States' sovereign immunity to tort claims arising from tribal programs carried out pursuant to the Indian Self-Determination and Education Assistance Act (the "Act"). This extension applies to claims arising from Act-related programs with Indian tribes. *See* Pub. L. 101–512, Title III, § 314, Nov. 5, 1990, 104 Stat. 1959, as amended Pub. L. 103–138, Title III, § 308, Nov. 11, 1993, 107 Stat. 1416 ("Section 314"); *see generally Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1002–06 (9th Cir. 2014).[1] The determination of whether a specific tribal employee is a federal employee, for purposes of Section 314, involves a two-step approach: (1) whether the alleged activity is encompassed by the relevant federal contract or compact; and (2) whether the alleged action falls within the scope of the tortfeasor's employment under state law. *See Shirk*, 773 F.3d at 1006–07. Erwine invokes the Act, First Am. Compl. ¶¶ 25–27, and the United States does not challenge that the *Shirk* test is satisfied under the instant circumstances.

## II. Legal Standards

### A. Rule 12(b)(1) — Subject Matter Jurisdiction and the United States' Sovereign Immunity

Federal courts are courts of limited jurisdiction and are presumed to lack jurisdiction until proven otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). The party invoking jurisdiction bears the burden of establishing the existence of subject matter jurisdiction. *Kokkonen*, 511 U.S. at 377.

Furthermore, the United States' sovereign immunity "is a question of the Court's subject matter jurisdiction." *McMillan v. Dep't of Interior*, 907 F. Supp. 322, 325 (D. Nev. 1995) (citation omitted); *see also Duval Ranching Co. v. Glickman*, 965 F. Supp. 1427, 1444 (D. Nev. 1997) ("The absence of the United States' consent to be sued is a 'fundamental,

---

[1] The U.S. Department of Interior's Bureau of Indian Affairs enters into agreements with tribes, wherein tribes operate certain programs services, functions, and activities pursuant to the Act. *See* Pub. L. 93–638, Jan. 4, 1975, 88 Stat. 2203, codified at 25 U.S.C.A. § 5301 et seq.

3

jurisdictional defect' which negates our subject matter jurisdiction."). "Under the principle of sovereign immunity, the United States may only be sued where it has expressly consented to such suit by statute." *McMillan*, 907 F. Supp. at 325 (citation omitted). The United States "may define the conditions under which it is willing to be sued." *Id*. (citation omitted). "'[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.'" *Id*. (citation omitted) (alteration in original).

When "ruling on a 12(b)(1) jurisdictional challenge, a court may look beyond the complaint and consider extrinsic evidence." *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003); *see also Whitehorn v. F.C.C.*, 235 F. Supp. 2d 1092, 1096 (D. Nev. 2002) (in a Rule 12(b)(1) factual attack, a court can hear and weigh extrinsic evidence, resolve factual disputes, and decide if it has subject matter jurisdiction without assuming the allegations in the complaint are true) (citations omitted).

**B.     Rule 12(b)(6) — Failure to State a Plausible Claim for Relief**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. *Severson v. Absolute Dental Grp., LLC*, No. 2:22-cv-01916-GMN-VCF, 2023 WL 2772004, at *2 (D. Nev. Apr. 1, 2023) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a court accepts factual allegations as true, it is insufficient to couch legal conclusions as factual allegations. *Id*. (citing *Twombly*, 550 U.S. at 555). Rules 8 and 12(b)(6) require more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See id*. (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. (citing *Iqbal*, 556 U.S. at 678.) This standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. (citing *Iqbal*, 556 U.S. at 678). Indeed, even when a complaint contains facts that are merely consistent with

4

a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). Under Rule 12(b)(6), a court may consider documents referenced in the complaint. *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 942 n.1 (9th Cir. 2008).

### III. Argument

#### A. The Court Lacks Subject Matter Jurisdiction Because Erwine Failed to Exhaust Administrative Remedies for the State Law Tort Claims Against the United States.

"Only under the authority of the FTCA does the United States waive its sovereign immunity as to claims sounding in tort." *Corey v. McNamara*, 409 F. Supp. 2d 1225, 1228 (D. Nev. 2006). Among the terms and conditions of the FTCA, a claimant must exhaust administrative remedies before commencing an FTCA action in federal court. *See Irish v. United States*, No. 2:13-cv-2201-APG-VCF, 2014 WL 2960300, at *4 (D. Nev. June 30, 2014). Exhaustion of administrative remedies includes presenting to the appropriate agency a written statement sufficiently describing the injury to enable the agency to begin its own investigation, along with a sum certain for damages. *Corey*, 409 F. Supp. 2d at 1228 (quoting *Blair v. IRS*, 304 F.3d 861, 864 (9th Cir. 2002)); *see also Ramone v. U.S. Postal Serv.*, No. 1:17-CV-0825-JLT, 2019 WL 3080820, at *4 (E.D. Cal. July 15, 2019) (The claim-presentation requirement ensures that federal agencies charged with making an initial attempt to settle tort claims against the United States are given full notice of the government's potential liability) (citation omitted). The claim-presentation requirement is jurisdictional. *Irish*, 2014 WL 2960300, at *4 (citations omitted); *McMillan*, 907 F. Supp. at 327. In *Blair*, 304 F.3d 861, the court upheld dismissal of plaintiff's medical expense claim because plaintiff had submitted a sum certain claim only for lost wages. In *Corey*, 409 F. Supp. 2d at 1228, the court dismissed the case because a union grievance document did not satisfy the claims-presentation requirements of the FTCA.

Courts have also explained that the basis of an FTCA claim must be state tort law; an FTCA claim cannot be based on a violation of federal law including the Constitution. *See, e.g., F.D.I.C. v. Meyer*, 510 U.S. 471, 477–78 (1994) (an alleged constitutional violation

is not cognizable as an FTCA claim); *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1025–6 (9th Cir. 2001) (a violation of federal law cannot serve as basis for an FTCA claim); *cf. McMillan*, 907 F. Supp. at 327 (the United States has not waived sovereign immunity for claims of constitutional violations).[2]

Erwine alleges in his complaint that the Tribe fired him (i) for a reason that violates Nevada public policy, i.e., that he refused to obey illegal orders in April 2021, November 2021, and February 2022, and/or (ii) in breach of a covenant of good faith and fair dealing that was implied into an employment contract. First Am. Compl. at 41–45. However, Plaintiff presented no such tort claims to the federal agency. Rather, Plaintiff alleged in his administrative claim that he was not afforded due process before being fired. *See* Ex. A SF-95 form.[3] That is a different right (with a different source for the right) than the state tort law claims asserted in the First Amended Complaint. And sovereign immunity bars the alleged violation of a constitutional right as a claim for damages against the United States. *McMillan*, 907 F. Supp. at 327. Thus, Erwine did not present any substantive, state law, wrongful termination claims to the agency before commencing this lawsuit.[4] Additionally, the complaint's incident dates of April 2021 and November 2021 are absent from Erwine's SF 95. *See* Ex. A. Accordingly, Erwine failed to present notice to the United States of an alleged wrongful termination claim based on the April 2021 and November 2021 incidents. Consequently, the Court lacks subject matter jurisdiction over the state law,

---

[2] Under the federal system, "[t]he word 'claim' denotes the allegations that give rise to an enforceable right to relief." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 (9th Cir. 2006) (quoting Moore's Federal Practice § 10.03[2][a] at 10–23 (3d ed.2006)).

[3] Erwine refers to his SF-95 form, First Am. Comp. ¶ 18.

[4] Citing *Miller v. United States*, 992 F.3d 878 (9th Cir. 2021), Erwine also alleges a failure to follow procedural protections, and he alleges in conclusory fashion the violation of constitutional rights. First Am. Compl. ¶¶ 319, 328. A failure to follow process is not one of the five rare grounds for a tortious discharge claim, and, as explained above, an FTCA claim cannot be based on an alleged violation of the Constitution. Additionally, in *Miller*, 992 F.3d 878, the Ninth Circuit addressed the discretionary function exception to the FTCA's waiver of sovereign immunity. The instant motion does not raise a discretionary function argument.

wrongful termination claims that are the subjects of Erwine's sixth and seventh claims for relief.

### B. Erwine's Factual Allegations Fail to Establish a Plausible Claim of Tortious Discharge of Employment.

"In Nevada, 'tortious discharge actions are severely limited to those rare and exceptional cases where the employer's conduct violates strong and compelling public policy.'" *Ceballos v. NP Palace, LLC*, 138 Nev. Adv. Op. 58, *7, 514 P.3d 1074, 1078 (2022) (citation omitted). The recognized examples for this rare tort are the following: (1) refusing to violate the law; (2) performing jury duty; (3) filing a workers' compensation claim or seeking industrial insurance; (4) refusing to work in unreasonable and dangerous conditions; and (5) whistle blowing. *Severson*, 2023 WL 2772004, at *2 (citations omitted). Erwine hangs his hat on the first ground of refusing to violate the law.

But Erwine's complaint does not provide well-pled facts to establish that he was ordered to violate the law, refused to violate the law, and was fired for the refusal. *In Allum v. Valley Bank of Nev.*, 970 P.2d 1062, 1063 (Nev. 1998) (a case decided before *Iqbal* and *Twombly*), the plaintiff's allegations included the following: the regulated bank transferred funds to an unregulated mortgage affiliate; the affiliate made loans without adhering to underwriting and regulatory requirements; supervisors threatened to fire employees who did not participate in the loans; plaintiff blew the whistle to federal regulators; and plaintiff was fired. Erwine does not allege comparable facts. In one instance, Erwine alleges that in February or April of 2021, he did not arrest a DUI suspect, and Erwine was later disciplined. *See* First Am. Compl. ¶¶ 135–136, 326. Erwine grieved the discipline with partial success. "The board concluded that the discipline be focused on Erwine not calling his supervisor rather than not making the arrest"; "Erwine should be given additional DUI training." First Am. Compl. ¶ 141. These allegations do not show that a supervisor ordered Erwine to violate the law, that Erwine refused the order, and they do not show that Erwine was terminated for the refusal. Erwine also contends that an arrest would have violated NRS 199.310 (criminal statute for malicious

arrest/prosecution). But Erwine would not have acted with malice toward the arrestee by following a determination by a supervisor that probable cause was established. In any event, Erwine fails to allege that he was actually given an order to arrest the person. Additionally, Erwine's label of an "unlawful" order or statement is conclusory and entitled to no credit. *Cf. Iqbal*, 556 U.S. at 679–680 (assertion of an "unlawful agreement" was deficient, conclusory allegation) (explaining *Twombly*, 550 U.S. at 555); *see also id.*, 556 U.S. at 678 (the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

Furthermore, Erwine's allegations are belied by the disciplinary and termination documents referenced in his complaint. A court "need not accept as true allegations contradicting documents that are referenced in the complaint." *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1008, (9th Cir. 2015) (citation omitted). The April 2021 disciplinary form (for the February 2021 traffic stop) indicates that the suspect failed some sobriety tests while he passed some others. *See* Ex. B at 5. Erwine was unsure about whether to make an arrest, given the conflicting aspects of the tests; Erwine let the DUI suspect go and then contacted his supervisor, rather than contact his supervisor first. Ex. B at 5. This does not establish that Erwine received and refused an order to arrest someone for which there was no probable cause.

The second instance is also belied by the disciplinary and termination documents referenced in his complaint. Erwine alleges that in November 2021 he received an unlawful order to arrest an individual related to a noise disturbance—though there is also a reference to a child molester, and Erwine refused the order. First Am. Compl.¶¶ 153–60, 327. However, the disciplinary document shows that the resident had failed to register as a sex offender, under NRS 179D.460, with the tribal jurisdiction. *See* Ex. B at 12. The disciplinary document is consistent with the existence of probable cause to arrest an unregistered sex offender. Therefore, the context here is "consistent" with lawful conduct by the Tribe (and thereby the United States), *see Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557); any well-pled factual allegations by Erwine fall short of the line of a

8

plausible claim for relief, *see Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). Furthermore, any reasonable debate among law enforcement officers about the existence of probable cause should not constitute the type of "rare and exceptional" grounds that violate "strong and compelling [Nevada] public policy" in the firing on an employee. *Ceballos*, 138 Nev. Ad. Op. at *6.

In the third and final instance, Erwine does not allege that he refused an order to arrest someone. Erwine confusingly alleges that on February 20, 2022, he failed to follow a non-existent order to place a detained, trespassing suspect in his patrol car. First Am. Compl. ¶¶ 171, 328. Erwine then alleges that it would have been unlawful to remove the non-arrested suspect from the investigation, even though Erwine does not allege that he received an unlawful order to remove the suspect from the scene. First Am. Compl. ¶ 328. According to the termination letter (referenced at First Am. Compl. ¶¶ 185–86), Erwine had failed to follow a recent, officer-safety-driven directive to place handcuffed detainees in a patrol car. *See* Ex. B at 2–3. The directive, given to all officers, arose from a February 19, 2022, domestic violence incident to which Erwine responded; the suspect was intoxicated, partially aggressive, and much heavier than Erwine. Ex. B at 2–3. Erwine does not allege that when the directive was given, he voiced objection to the directive as unlawful. Rather, Erwine responded to an incident the next day, on February 20, 2022, where a trespassing suspect came out of a house holding a claw hammer. Ex. B at 3. After the suspect dropped the hammer, Erwine handcuffed the suspect, but Erwine placed the suspect on the ground rather than in the patrol car. Ex. B at 3. The Tribe viewed this non-compliance with the (unobjected to) directive as insubordination. Ex. B at 3. These facts do not establish that Erwine received and refused an unlawful order. *See United States v. Young*, No. 2:13-cr-149-KJD-CWH, 2014 WL 321160, at *10 (D. Nev. Jan. 29, 2014) (the Ninth Circuit has clarified that a *Terry* stop is not transformed into a de facto arrest when a defendant is moved from the street to the back of a police car) (citing *United States v. Parr*, 843 F.2d 1228, 1231 (9th Cir. 1988), *report and recommendation adopted,* 2014 WL 11380771 (D. Nev. Mar. 17, 2014)).

Finally, a tortious discharge claim cannot be established by a mixed motive theory; the public policy-protected conduct must be the proximate cause of the discharge. *See Allum*, 970 P.2d at 1066, 1069 (Nev. 1998); *see also Bigelow v. Bullard*, 901 P.2d 630, 632 (Nev. 1995) ("The gravamen of the tort is the employer's improperly dismissing an employee for public policy-related causes."). Here, the termination letter shows that the Tribe fired Erwine based on a totality of circumstances from multiple incidents and concerns. There were instances of Erwine leaving keys on the hoods of patrol cars in March 2020. Ex. B at 3. In April 2021, Erwine allowed an intoxicated driver to leave the scene with a firearm. Ex. B at 3. Erwine failed to give *Miranda* warnings to suspects on February 19, 2022, and March 9, 2020. Ex. B at 2. Moreover, Erwine falsely asserted that another officer had given *Miranda* warnings to the suspect on February 19, 2022; the other officer's body camera footage established that the officer had not given *Miranda* warnings. Ex. B at 3.

Thus, the well-pled factual allegations, referenced documents, and context here do not establish a plausible claim that a supervisor ordered Erwine to violate the law, Erwine refused the order, and Erwine was fired because of his refusal. As a result, the Court should dismiss the tortious discharge claim (sixth claim for relief).

    **C.**    **Erwine's Factual Allegations Fail to Establish a Bad Faith Discharge of Employment.**

Nevada first recognized the tort of bad faith discharge in *K Mart Corp. v. Ponsock*, 732 P.2d 1364 (Nev. 1990), where the employer hired the plaintiff "until retirement," but then fired him six months before retirement to divest him of retirement rights. *See Martin v. Sears, Roebuck & Co.*, 899 P.2d 551, 555 (Nev. 1995) (explaining *Ponsock*). This tort finds its genesis in the principle, from the Restatement (Second) of Contracts, that every contract implies a duty of good faith and fair dealing in its performance and its enforcement. *Id.* Thus, for the cause of action to apply, there must be an enforceable contract. *Id.* Additionally, there must be a special relationship between the tortfeasor and the tort victim, such as the relationship that exists between an insured and an insurer, and the

employer's conduct must go well beyond the bounds of ordinary liability for breach of contract. *Id.* The mere breach of an employment contract by a large and powerful employer, or any employer, does not in and of itself give rise to tort damages. *Id.*

As in *Martin*, Erwine's allegations do not establish an employment contract between the Tribe and him. Rather, the referenced contract is between Tribe and the BIA. *See* First Am. Compl. ¶ 332. That contract is not signed by Erwine, and it does not purport to govern the terms of his employment. *See* Ex. C. With no employment contract, there can be no breach of an implied covenant. Additionally, Erwine's allegations are not otherwise similar to the case of *Ponsock*, e.g., breaching a long-term employment contract to avoid paying retirement benefits. Erwine's allegations do not establish anything more than garden-variety disputes with his employer over his performance.

      **D.    The FTCA Precludes Awards for Punitive Damages, Attorney's Fees, and Prejudgment Interest, and There Is No Right to a Jury Trial against the United States.**

Erwine includes requests for awards that are prohibited by the FTCA. A plaintiff has no right to either punitive damages or attorney's fees for an FTCA claim. *Nurse v. United States*, 226 F.3d 996, 1004 (9th Cir. 2000) (citing 28 U.S.C. § 2674 and *Anderson v. United States,* 127 F.3d 1190 (9th Cir. 1997)). Erwine includes such impermissible requests in his sixth and seventh claims for relief, as well as the prayer for relief. *See* First Am. Compl. ¶¶ 330, 346, Prayer for Relief at 57:17–19.

To the extent Erwine requests prejudgment interest, First Am. Compl. ¶¶ 330, 346, Prayer for Relief at 57:20, the FTCA also prohibits that relief. *See* 28 U.S.C. § 2674.

Finally, a plaintiff has no right to a jury trial in an FTCA claim against the United States. *See Nurse*, 226 F.3d at 1004 (citing 28 U.S.C. § 2402 and *In re Consolidated U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 992 (9th Cir. 1987)). To the extent Erwine requests a jury trial, First Am. Compl. at 1, it is not available against the United States.

Thus, Erwine's sixth and seventh claims for relief, along with the prayer for relief, include requests that are prohibited by the FTCA.

11

## IV. Conclusion

Erwine failed to exhaust administrative remedies for his state law, wrongful termination claims against the Unites States. Rather than presenting to the agency an administrative claim asserting torts based on the reasons for his firing, Erwine presented an administrative claim asserting that he was not afforded federal due process rights in the lead up to his firing. That is a different claim with a different source of rights. Any alleged violation of the Constitution or other federal law is not cognizable under the FTCA. Additionally, Erwine's factual allegations, the referenced documents, and the context here fail to establish plausible claims of tortious discharge and bad faith discharge of employment (sixth and seventh claims for relief), which are the only claims directed at the United States. Finally, Erwine also requests awards and a jury trial that are prohibited by the FTCA. For these reasons, the Court should dismiss the United States from this action.

Respectfully submitted this 3rd day of June 2024.

JASON M. FRIERSON
United States Attorney

 /s/  Patrick A. Rose
PATRICK A. ROSE
Assistant United States Attorney