# Exhibit "C"

## Compact of Self-Governance Between The Washoe Tribe of Nevada and California and The United States of America

# COMPACT OF SELF-GOVERNANCE

## BETWEEN

## THE WASHOE TRIBE OF NEVADA AND CALIFORNIA

## AND

## THE UNITED STATES OF AMERICA

## ARTICLE I - AUTHORITY AND PURPOSE

**Section 1 - Authority**.  This Agreement, denoted a Compact of Self-Governance ("Compact"), is entered into by the Secretary of the Interior ("Secretary"), for and on behalf of the United States of America, pursuant to the authority granted by Title IV of P.L. 93-638, as amended, and the Washoe Tribe of Nevada and California ("Washoe").

**Section 2 - Purpose**.  This Compact shall be liberally construed to achieve its purposes:

    **(a)**    This Compact is to carry out Self-Governance as authorized by Title IV of P.L. 93-638, as amended, which built upon the Self-Governance Demonstration Project, and transfers control to tribal governments, upon tribal request and through negotiation with the United States, over funding and decision-making of certain federal programs, functions, services and activities ("PFSAs"), as an effective way to implement the federal policy of government-to-government relations with Indian tribes.

    **(b)**    This Compact is to enable Washoe to redesign PFSAs of the Bureau of Indian Affairs; to reallocate funds for such PFSAs according to tribal priorities; to enhance the effectiveness and long term financial stability of tribal government; to plan, conduct, consolidate and administer PFSAs, or portions thereof, administered by the Department of the Interior, other than through the Bureau of Indian Affairs, to the extent provided in any Annual Funding Agreement ("AFA") for any such non-Bureau of Indian Affairs PFSA; and to reduce the Federal bureaucracy.

    **(c)**    This Compact is to enable the United States to maintain and improve its unique and continuing relationship with and responsibility to Washoe through self-governance which will allow Washoe to: take its rightful place in the family of governments in the federal constitutional system; remove federal obstacles to effective self-governance; reorganize tribal government programs and services; and provide a documented example for the development of future Federal Indian policy.  This policy of tribal self-governance shall permit an orderly transition of federal domination of PFSAs to allow Washoe meaningful authority to plan,

conduct and administer those PFSAs to meet the needs of its people.  To implement Self-Governance, the Department of the Interior is expected to provide the same level of service to other tribal governments.  In fulfilling its responsibilities under this Compact, the Secretary hereby pledges that the Department will conduct all relations with Washoe on a government-to-government basis.

**Section 3 - Choice of Law**.  This Compact shall be governed by federal law, or to the extent not inconsistent, tribal law.  The policies and procedures of Washoe shall be applied in the execution of this Compact and any AFA negotiated thereunder and the decisions of its Executive Committee shall be respected, to the extent that federal law, construed in accordance with the applicable canons of construction and Title IV of P.L. 93-638, as amended, is not inconsistent.

## ARTICLE II - TERM, PROVISIONS AND CONDITIONS

**Section 1 - Term and Effective Date**.  The Compact shall be effective when signed by the Secretary and an authorized representative of Washoe.  It shall remain in effect for so long as authorized by federal law.

**Section 2 – Funding Amount**.  Subject only to the appropriation of funds by the Congress of the United States and to adjustments pursuant to Section 403(g) of Title IV of P.L. 93-638, as amended, and Section 106(b) of Title I of P.L. 93-638, as amended, the Secretary shall provide Washoe the total amount specified in each AFA negotiated in accordance with this Compact.

**Section 3 – Payment.**

   (a)     **Payment Schedule**.  Payment shall be made as expeditiously as possible and shall include financial arrangements to cover funding during periods under continuing resolutions to the extent permitted by such resolutions to the extent authorized by law.  For each fiscal year covered by an AFA negotiated under this Compact, the Secretary shall pay the funds specified for that fiscal year under the AFA by paying the total amount provided for in the AFA in one advance lump sum payment to the extent applicable.  The payment shall be made on or before ten (10) calendar days after the date on which the Office of Management and Budget apportions the appropriations for that fiscal year for the PFSAs subject to the Compact or on the first working day of the fiscal year.  The payment shall be made through the FFS Payment System.

**Section 4 – Audits.**

   (a)     **Single Audit Act Audit**.  Washoe shall provide to the Secretary an annual single organization-wide audit as prescribed by the Single Audit Act of 1984, 31 U.S.C. §7501, *et seq.*, and shall adhere to generally accepted accounting principles and Circular No. A-133 of the Office of Management and Budget ("OMB").

**(b)    Cost Principles**.  Washoe shall apply cost principles under the applicable OMB Circular, except as modified by Section 106(k) of Title I of P.L. 93-638, as amended, which section is hereby incorporated into this Compact, or by any exemptions to applicable OMB Circulars subsequently granted by OMB.  No other audit or accounting standards shall be required by the Secretary.

**Section 5 - Records**.  The following provisions will supplement Washoe's policies on document disclosure and will govern record keeping associated with this Compact.

**(a)**    Except for previously provided copies of tribal records that the Secretary demonstrates are clearly required to be maintained as part of the record keeping system of the Department of the Interior, tribal records shall not be considered federal records for purposes of Chapter 5 of Title 5, United States Code.

**(b)**    Washoe shall maintain a record keeping system, and provide the Secretary reasonable access to records, to enable the Department of the Interior to meet its minimum legal record keeping program requirements under the Federal Records Act, 44 U.S.C. § 3101, *et seq*., and to allow for retrocession of this Compact in whole or in part pursuant to Section 7 of Article V.

**(c)**    Washoe shall maintain in its record keeping system all documents necessary for the annual audit requirement in Section 4 of this Article.

**Section 6 – Savings**.  Notwithstanding any other provision of law, Congressionally appropriated funds allocated in accordance with an AFA negotiated under this Compact may be expended by Washoe in accordance with its budget for the year for which the funds are appropriated or carried over and expended in any subsequent fiscal year.  Any funds not expended during the term of any of the fiscal years of this Compact may be carried over to the succeeding fiscal year, and such carry-over shall not diminish the amount of funds that Washoe is authorized to receive in that succeeding fiscal year or in any subsequent fiscal year.  Any carry-over of funds may be reallocated by Washoe to any other PFSA under this Compact or an AFA negotiated thereunder, unless otherwise provided by statute or regulation.

**Section 7 – Reports to Congress**.  In accordance with Section 405 of Title IV of P.L. 93-638, as amended, the Secretary shall submit to the Congress a written report on January 1 of each year following the negotiation of this Compact on the relative costs and benefits of Tribal Self-Governance.  Such report shall separately include the views of Washoe.  The Secretary shall provide Washoe with a draft of each report required to be submitted to Congress under this provision for review prior to the submission of the report to Congress.

**Section 8 - Federal Supply Sources**.  Federal supply sources (including lodging, airline transportation and other means of transportation including the use of Interagency Motor Pool vehicles) shall be available to Washoe and to its employees to the same extent as if Washoe

were a federal agency. While implementation of this provision is the responsibility of the General Services Administration, the Department shall assist Washoe to resolve any barriers to full implementation that may arise.

**Section 9 - Successor AFA.** Negotiations for a successor to the AFA shall begin no later than 120 days in advance of the conclusion of the preceding AFA. Pursuant to Sections 403(b) and (g) and 404 of Title IV of P.L. 93-638, as amended, the Secretary shall make best efforts to continue and to promote self-governance in preparing his/her budgets for subsequent years. The Secretary or an authorized representative agrees to prepare and supply relevant information, and to promptly comply with Washoe's requests for information reasonably needed to determine what funds may be available for successor AFAs.

**Section 10 - Secretarial Review for Contracts.** Every contract entered into by the Tribe in connection with a PFSA encompassed by this Compact or an AFA shall comply with the Indian Tribal Economic Development and Contract Encouragement Act of 2000, 25 USC § 81, and implementing final regulations found at 25 CFR Part 84 (66 FR 38918, July 26, 2001).

**Section 11 - Matching Funds.** All funds provided under this Compact and any AFA entered into pursuant to Title IV of P.L. 93-638, as amended, and all funds provided under contracts or grants made pursuant to Title I of P.L. 93-638, as amended, shall be treated as non-federal funds for purposes of matching requirements under any federal law.

**Section 12 - Wage and Labor Standard.** The parties agree that the wage and labor provisions set forth in Section 7(a) of Title I of P.L. 93-638, as amended, apply to all laborers and mechanics employed by contractors or subcontractors (excluding tribes and tribal organizations) in the construction, alteration or repair, including repainting or redecorating of buildings or other facilities in connection with this Compact.

**Section 13 - Non-Bureau of Indian Affairs Programs.** Subject to Subpart F of the regulations promulgated pursuant to Section 407 of Title IV of P.L. 93-638, as amended, the administration of PFSAs under Section 403(b)(2), (b)(3) and (c) of P.L. 93-638, as amended, shall be controlled by applicable terms included in an AFA.

**Section 14 - Policy Guidelines & Regulations.** The Secretary and Washoe agree to utilize the following procedures governing the establishment and application of program rules and regulations under this Compact and any AFA negotiated thereunder:

  **(a)**  **Program Rules.** Washoe will not be required to comply with program guidelines, manuals, or policy directives other than those identified in this section or in any AFA negotiated under this Compact in carrying out the PFSAs under any such AFA. Notice of program guidelines established by Washoe may be provided to the Secretary upon request or by Washoe voluntarily.

**(b)**     **Federal Regulations**.

    **(i) Applicable Federal Regulations**.  In carrying out the provisions of this Compact and any AFA negotiated thereunder, Washoe will be required to comply with applicable federal regulations.

    **(ii) Waiver of Regulations**.  Any applicable regulations of the Department of the Interior may be waived in accordance with waiver provisions contained in Subpart J (Sections 1000.220 – 1000.232) of the regulations promulgated under Section 403(i) of Title IV of P.L. 93-638, as amended.

## Section 15 - Property.

**(a)**     **In General**.  As provided in Section 105(f) of Title I of P.L. 93-638, as amended, (25 U.S.C. § 450j(f)), at the request of Washoe, the Secretary shall make available, or transfer to Washoe, all reasonably divisible real property, facilities, equipment and personal property that the Secretary has used to provide or administer the PFSAs covered by this Compact or AFA.  A mutually agreed upon list specifying the property, facilities and equipment so furnished shall also be prepared by the Secretary, with the concurrence of Washoe, and periodically revised by the Secretary, with the concurrence of Washoe.  The parties agree that the government-owned personal property that has been in the possession of and used by Washoe in the performance of Title I Contract responsibilities up to the time of the execution of this Compact shall continue in the possession of Washoe for use in the performance of the PFSAs listed in any AFA negotiated under this Compact.

**(b)**     **Records**.  Washoe shall maintain a record of all property referred to in subparagraph (a) or other property acquired by Washoe under this Compact or AFA for purposes of replacement.

**(c)**     **Joint Use Agreements**.  Upon the request of Washoe, the Secretary and Washoe shall enter into a separate joint use agreement to address the shared use by the parties of real or personal property that is not reasonably divisible.

**(d)**     **Acquisition of Property**.  Washoe is granted the authority to acquire such surplus or excess property as Washoe may determine to be appropriate in the judgment of Washoe to support the PFSAs operated pursuant to this Compact.  Subject to the agreement of the General Services Administration, non-Department of the Interior property may be similarly acquired.

**(e)**     **Confiscated or Excess Property**.  The Secretary shall assist Washoe in obtaining such confiscated or excess property as may become available to Tribes, Tribal Organizations or local governments.

**(f)**     **Screener Identification Card**.  A screener identification card (General

Services Administration form numbered 2946) shall be issued to Washoe not later than the effective date of this Compact.  The Designated Official shall, upon request, assist Washoe in securing the use of the card.

   **(g)**   **Capital Equipment**.  Washoe shall determine its capital equipment, leases, rentals, property or services required to perform its obligations under this subsection, and shall acquire and maintain records of such capital equipment, property, rentals, leases, property or services through applicable Procurement Policies of Washoe.

   **(h)**   **Reversion of Title**.  Title to property and equipment furnished by the federal government for use in the performance of this Compact and any AFA which has a value in excess of $5,000 at the time of retrocession, rescission, or termination of the AFA, and is not donated, shall, at the option of the Secretary, revert to the United States.

   **(i)**   **Replacement of Property**.  Property and equipment furnished by the federal government for use in the performance of the Compact and AFA or purchased with funds under any AFA that is utilized by Washoe in the performance of the Compact shall remain eligible for replacement to the same extent as if title to such property was vested in the United States.

   **(j)**   **Leasing of Facilities**.  Subject to the availability of appropriations for the implementation of Section 105(l)(1) & (2) of Title I of P.L. 93-638, as amended, the Secretary may enter into a lease with Washoe for facilities owned by Washoe and used in performance of PFSAs.

**Section 16 – Insurance and Federal Tort Claims Act.**  Washoe shall be fully covered by the Federal Tort Claims Act and any liability insurance or equivalent coverage that the Secretary provides to Title I contractors or obtains pursuant to Section 102 of P.L. 93-638, as amended.

**Section 17 - Mature Contractor Status upon Compact Termination.**  Should Washoe elect to convert all or some of the programs operated under this Compact or an AFA to Title I, P.L. 93-638, as amended, contract status, Washoe shall retain the mature contractor status held prior to entering into this Compact and any AFA.  Provided that the auditing requirements for maintaining mature contractor status have continued to be met during the period this Compact is in effect.

**Section 18 - Sovereign Immunity.**  Nothing in this Compact or any AFA shall be construed to alter, affect or otherwise diminish the sovereign immunity of Washoe.

**Section 19 - Disputes.**

   **(a)**   **Litigation Procedures**.  Section 110 of Title I of P.L. 93-638, as amended, shall apply to disputes under this Compact and any AFA negotiated thereunder.

**(b)    Alternative Procedures.**  In accordance with Subpart R of the Title IV regulations (Sections 1000.420 – 1000.438), the parties may pursue alternative remedies and procedures in addition to, or as an alternative to, remedies and procedures prescribed by Section 110 of P.L. 93-638, as amended..  In addition to alternative remedies and procedures set forth in Subpart R, the parties jointly may submit the dispute to non-binding mediation processes provided for under the tribal laws of Washoe.

**Section 20 – Inclusion of Title I Provisions.**  In accordance with 403(l), at the option of Washoe, any or all provisions of Title I of P.L. 93-638, as amended, shall be made part of any agreement entered into under Title IV.  The Secretary is obligated to include such provisions at the option of Washoe.  If such provision is incorporated it shall have the same force and effect as if set out in full in Title IV.

The following sections of Title I, P.L. 93-638, as amended, shall apply to this Compact:

**(a)**    Section 108(c)(B)(6)(iii) (Applicability of the Prompt Payment Act, Chapter 39 of Title 31, U.S.C.);

**(b)**    Section 106(f) (Limiting Secretary's ability to disallow costs);

**(c)**    Section 109 (Emergency reassumption procedures);

**(d)**    Section 105(b) (Retention of interest on advance payments);

**(e)**    Section 106(k) (Limits of Withhold or suspension of funds);

**(f)**    Section 108(c)(B)(7)(iii) (Tribal records not Federal records under Chapter 5 of Title 5);

**(g)**    Section 102(a) and (b) (Declination process); and

**(h)**    Section 102(c) (Insurance and Federal Tort Claims Act).

**Section 21 - Indian Preference in Employment, Contracting and Subcontracting.**  The Indian Preference in training, employment and procurement and employment of Section 7(b) of Title I of P.L. 93-638, as amended, shall apply to Washoe in the performance of its responsibilities under this Compact or an AFA negotiated thereunder.  The parties agree that when a PFSA is intended to benefit only Washoe and its members, Washoe's tribal employment or contract preference laws shall govern with respect to the administration of that PFSA.

## ARTICLE III - OBLIGATIONS OF THE UNITED STATES

**Section 1 - Trust Responsibility.** The United States reaffirms its trust responsibility to protect, preserve and conserve all trust resources associated with this Compact and any AFA negotiated hereunder. Nothing in this Compact is intended to, nor should be interpreted to, terminate, waive, modify, diminish or reduce the trust responsibility of the United States to Washoe, any tribe or individual American Indian participating in this Compact or otherwise entitled to the benefits of the federal trust responsibility. The Secretary pledges to practice utmost good faith in upholding said trust responsibility.

**Section 2 - Trust Evaluations.**

      **(a)**    **Trust Evaluation and Reassumption.** Pursuant to Section 403(d) of Title IV of P.L. 93-638, as amended, the United States shall monitor through annual trust evaluations the trust functions performed by Washoe pursuant to an AFA. Further, the United States may reassume any PFSAs, or portions thereof, if there is a finding of imminent jeopardy to a physical trust asset, natural resource or to public health and safety. In accordance with Sections 1000.302-1000.304 of the final rule, imminent jeopardy to a physical trust asset or natural resource means  an immediate threat and likelihood of significant devaluation, degradation, damageor loss of a physical trust asset or natural resource or the intended benefit from such trust asset or resource; caused by the inactions or actions of Washoe; imminent jeopardy to public health and safety means an immediate and significant threat of serious harm to human well-being, including conditions which may result in serious injury or death caused by the  Washoe's action or inaction. Evaluations shall not be burdensome and shall be conducted on a cost effective basis.

      **(b)**    **Trust Evaluation Process.** For purposes of this section, a Trust Evaluation will entail a determination that trust functions assumed by Washoe are carried out in compliance with applicable laws and regulations, as may be verified through:

          **(i)** A review of transactions which required Secretarial approval.

          **(ii)** On-site inspections of those trust resources.

          **(iii)** Any other criteria, processes or appropriate practices as may be negotiated in the AFA.

      Information and analysis obtained by such evaluations shall be immediately provided to Washoe's designated representative. If the Secretary's designated representative makes findings which indicate a risk of imminent jeopardy, the Secretary's designated presentatives shall immediately notify Washoe of the specific concerns. Unless there is imminent jeopardy, the United States shall not take back the responsibility for management of that PFSA, or portion thereof. If, however, resources are available, the United States will provide appropriate assistance to Washoe to enable the protection and conservation of physical trust

assets, natural resources and preservation of health and safety.

If there is imminent jeopardy, as defined in subsection (a) above, the United States shall notify Washoe in writing immediately in accordance with Section 1000.305 of the Title IV regulations. The United States and Washoe shall comply with reassumption procedures set forth in Sections 1000.306 – 1000.318 of the Title IV regulations.

**Section 3 - Programs Retained.** The United States retains any PFSAs with respect to Washoe that are not specifically assumed by Washoe in an AFA. The Secretary agrees that a Program Outcome Evaluation may be performed by Washoe with the cooperation of the Secretary, annually as to each PFSA which is retained by the United States pursuant to this section. Evaluations shall not be burdensome and shall be conducted on a cost effective basis. The findings and recommendations shall be reported to the Secretary.

**Section 4 - Financial and other Information.** Washoe shall be eligible for new PFSAs on the same basis as other tribes and the Secretary or an authorized representative shall advise Washoe of the funding available for such PFSAs. The United States shall provide Washoe the following:

      **(a)**     Quarterly copies of the Secretary's Status of Obligations reports of the Central Office concerning the Western Region obligations; or in the event a new reporting system is implemented by the Bureau of Indian Affairs, the closest equivalent report;

      **(b)**     Quarterly Bureau of Indian Affairs 550x and 520 reports, or the closest equivalent in the event the report title or format is changed; and,

      **(c)**     Revisions in such program, plans, guidelines or budgets as they are made which may affect Western Region Office Tribes.

Responses providing other information which may be requested by Washoe shall be made within ten (10) working days of a request being submitted.

### ARTICLE IV - OBLIGATIONS OF WASHOE

**Section 1 - Tribal Programs.** Washoe agrees to perform such PFSAs that are identified in any AFA negotiated under this Compact, to the extent of the funding which is provided in the AFA. Washoe pledges to practice utmost good faith in upholding its responsibility to provide such PFSAs.

**Section 2 - Consolidation.** To the extent a PFSA included within the AFA was included within a contract or grant previously entered into by Washoe pursuant to P.L. 93-638, as amended, or is subject to any obligation arising from such contract or grant, that contract or grant is terminated and the parties' obligations shall be governed by this Compact.

**Section 3 - Amount of Funds**.  The total amount of funds that the Secretary shall make available to Washoe for the performance of its obligations under this Compact shall be identified in an AFA negotiated between the Secretary and Washoe and incorporated into this Compact as Attachment B.

**Section 4 - Compact Programs**.  With the exception of the specific responsibilities of the United States identified and retained in this Compact, and the PFSAs identified in Section 403(b)(4) of Title IV of P.L. 93-638, as amended, Washoe will perform the PFSAs as identified in each AFA negotiated under this Compact; provided that Washoe may consolidate, redesign and reallocate funds for such PFSAs as provided in this Compact.

**Section 5 - Reallocation**.  Reallocation of funds from one PFSA to another shall not require Secretarial consent, except that any reallocation of funds shall be subject to limitations expressly set forth in federal statutory or regulatory law.  Washoe may merge PFSAs provided under any AFA with other PFSAs provided with its own funds or funds from other sources. Washoe may augment AFA funds with funds from other sources to carry out PFSAs.

**Section 6 - Trust Services for Individual Indians**.  To the extent that the AFA endeavors to provide trust services to individual American Indians that were formerly provided by the Secretary or an authorized representative, Washoe will maintain at least the same level of service as was previously provided by the Secretary or an authorized representative.  Washoe pledges to practice utmost good faith in upholding its responsibility to provide such services, to the extent funds are provided.  Trust services for individual Indians means only services that pertain to land or financial management connected to individually held allotments.

**Section 7 - Tribal Administrative Procedures**.  Washoe shall provide administrative due process pursuant to the Indian Civil Rights Act of 1968, 25 U.S.C. § 1301, *et seq.* to protect the rights and interests that any person, or group of persons, may have with respect to PFSAs that are provided pursuant to any AFA negotiated under this Compact.

## ARTICLE V - OTHER PROVISIONS

**Section 1 - Designated Officials**.  The Designated Official for the United States shall be the Director of the Office of Self-Governance.  On or before the effective date of this Compact Washoe shall provide the Director of the Office of Self-Governance with a written designation of a senior official as its representative/liaison official for notices, proposed amendments to the Compact and other purposes for this Compact.

**Section 2 - Interpretation of Federal Law**.  In accordance with Section 403(i) of Title IV of P.L. 93-638, as amended, the Secretary shall interpret Federal laws and regulations in a manner that facilitates the inclusion of PFSAs in an AFA, and the implementation of this Compact and all subsequent AFAs negotiated thereunder shall be in accordance with the spirit of Congressional policies regarding Self-Governance.

**Section 3 - Compact Modifications or Amendments**.  To be effective, any modifications of this Compact shall be in the form of a written amendment and shall require the written consent of Washoe and the United States.  Any modifications proposed by Washoe or the Secretary shall be reviewed and acted upon within 60 days of receipt by the Designated Federal or Tribal Official.

**Section 4 - Severability**.  Except as provided in this section, this Compact shall not be considered invalid, void or voidable if any section or provision of this Compact is found to be invalid, unlawful or unenforceable by a court of competent jurisdiction.  In the event that a section of this Compact, or any Amendment thereto, is found by a court of competent jurisdiction to be invalid, void or voidable, the parties will seek by mutual agreement to amend, revise or delete any such section or provision, in accordance with Article V § 3 of this Compact.

**Section 5 - Officials not to Benefit**.  No Member of Congress, or resident commissioner, shall be admitted to any share or part of any AFA or contract thereunder executed pursuant to this Compact, or to any benefit that may arise from such Compact.  This paragraph may not be construed to apply to any contract with a third-party entered into under an AFA pursuant to this Compact if such contract is made with a corporation for its general benefit.

**Section 6 - Covenant Against Contingent Fees**.  The parties warrant that no person or selling agency has been employed or retained to solicit or secure any contract executed pursuant to this Compact upon an agreement or understanding for a commission, percentage, brokerage or contingent fee, excepting bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business.

**Section 7 - Compact Participation and Retrocession**.

The retrocession provision of Section 105(e) of P.L. 93-638, as amended, shall apply to this Compact.

**Section 8 - Penalties**.  The parties agree that the criminal penalties set forth in 25 U.S.C. § 450d apply to all activities conducted pursuant to this Compact.

## ARTICLE VI — ATTACHMENTS

**Section 1 – Approval of Compact**.  The resolution for Washoe approving this Compact is identified as an attachment to Attachment A.

**Section 2 – AFA**.  Each AFA negotiated under this Compact shall be attached hereto as Attachment B.

## ARTICLE VII — COUNTERPART SIGNATURES

This Compact may be signed in counterparts.

IN WITNESS WHEREOF, the parties have executed, delivered and formed this Compact.

**WASHOE TRIBE OF NEVADA AND CALIFORNIA**

By: _A. Brian Wallace, Chairman_        Date _9/27/06_

**UNITED STATES OF AMERICA**

By: _____        Date _12-19-06_
Deputy Assistant Secretary
Policy and Economic Development