UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MICHAEL ERWINE,

    Plaintiff

v.

UNITED STATES OF AMERICA, et al.,

    Defendants

Case No.: 3:24-cv-00045-MMD-CSD

**Order**

Re: ECF Nos. 64, 71

Before the court are two motions to stay discovery pending resolution of motions to dismiss. The first motion is filed by defendants Michel Hall, John Leonard, and Zachary Westbrook (collectively, the Tribal Defendants). (ECF No. 64.) Plaintiff filed a response. (ECF No. 74.) The Tribal Defendants filed a reply. (ECF No. 85.) The second motion is filed by the United States. (ECF No. 71.) Plaintiff filed a response. (ECF No. 82.) The United States filed a reply. (ECF No. 87.) The court held a hearing on these motions on August 28, 2024, and issues the instant Order.

For the reasons set forth below, the motion to stay discovery filed by the United States is granted, but the motion to stay discovery pending resolution of the motion to dismiss filed by the Tribal Defendants is denied.

**I. BACKGROUND**

The lengthy factual and procedural background of Plaintiff's original 2018 lawsuit[1] and current lawsuit filed in 2024 are discussed in the court's earlier order granting a motion to stay

---

[1] In Plaintiff's 2018 lawsuit, 3:18-cv-00461-RCJ-WGC, the defendants were granted summary judgment, which was affirmed by the Ninth Circuit on March 7, 2023.

discovery filed by defendants Churchill County and Sheriff Benjamin Trotter. (ECF No. 32.) In short, Plaintiff was employed by the Churchill County Sheriff's office from December 2015, until he was terminated in October 2016. Plaintiff alleges Trotter made false and stigmatizing comments in a memorandum that was placed in Plaintiff's personnel file when he was employed by the Churchill County Sheriff's Office (the Trotter Memorandum). Plaintiff avers that the Trotter Memorandum was then disclosed to other law enforcement agencies which resulted in his being unable to obtain employment as a law enforcement officer.

Plaintiff was eventually able to gain employment with the Washoe Tribe of Nevada and California (Washoe Tribe), where he worked between October 2019 and March 2022. Westbrook was a sergeant and then chief of police for the Washoe Tribe; Leonard was the deputy chief of police for the Washoe Tribe; and Hall was a sergeant for the Washoe Tribe. Plaintiff also includes allegations against defendant Gene Burk, whom Plaintiff alleges was general counsel for the Washoe Tribe.[2] Plaintiff's First Amended Complaint (FAC) asserts claims against the Tribal Defendants concerning his employment and termination from the Washoe Tribe including: racial discrimination under 42 U.S.C. § 1981; conspiracy to interfere with civil rights and obstructing justice under 42 U.S.C. § 1985(2); conspiracy to interfere with civil rights for deprivation of rights and privileges under 42 U.S.C. § 1985(3); and a Fifth Amendment due process claim (against Westbrook, Leonard, and Hall).[3]

The Tribal Defendants have moved to dismiss Plaintiff's FAC, arguing: (1) the court does not have subject matter jurisdiction over them pursuant to the doctrine of sovereign immunity,

---

[2] Burk is representing himself in this matter. He has not filed a motion to dismiss or a motion to stay discovery, but he asserted at the hearing that the Tribal Defendants arguments apply to him as well.

[3] The tort claims for defamation, defamation per se, and intentional interference with contractual relations against the Tribal Defendants were dismissed pursuant to stipulation. (ECF No. 89.)

2

which they claim applies to the Washoe Tribe as well as its officers and employees when they act in their official capacities and within the scope of their authority; (2) Plaintiff failed to join the Washoe Tribe, which is a necessary party; (3) the District of Nevada is an improper venue for the Plaintiff's claims which arose within the interior boundaries of the Washoe Tribe; and (4) Plaintiff failed to exhaust tribal administrative remedies before filing suit. (ECF No. 62.)

The Tribal Defendants move to stay discovery pending resolution of their motion to dismiss on the basis that the sovereign immunity of the Washoe Tribe extends to officers and agents of the tribe acting in their official capacity within the course and scope of their positions and authority.

Plaintiff asserts two claims against the United States under the Federal Tort Claims Act (FTCA) for wrongful termination/tortious discharge and bad faith discharge.

The United States has moved to dismiss the claims against it on the basis that the court lacks subject matter jurisdiction because Plaintiff failed to exhaust administrative remedies, and in any event, his allegations fail to establish a plausible claim for tortious discharge or bad faith discharge of employment.

The United States moves for a stay of discovery pending resolution of its motion to dismiss arguing the court lacks subject matter jurisdiction over this matter because Plaintiff failed to exhaust administrative remedies as to the claims asserted under the FTCA.

## II. DISCUSSION

**A. Standard to Stay Discovery**

"Courts have broad discretionary power to control discovery." *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013) (citation omitted). "The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially

dispositive motion is pending." *Id*. (quotation marks and citation omitted). "Instead, a party seeking to stay discovery carries the heavy burden of making a strong showing why discovery should be denied." *Id.* (citation omitted). At the outset, courts are guided by Federal Rule of Civil Procedure 1 to ensure a "just, speedy, and inexpensive determination of every action and proceeding."

Judges within the District of Nevada have used varying approaches to determine whether a stay of discovery is warranted while a potentially dispositive motion is pending: the "preliminary peek" approach and the "good cause" approach.

Under the "preliminary peek" approach, courts look at whether: (1) the pending motion is potentially dispositive; (2) the potentially dispositive motion can be decided without additional discovery; and (3) the court has taken a 'preliminary peek' at the merits of the potentially dispositive motion and is convinced that the motion may be successful and the claim(s) will be dismissed. *Id*. (citation omitted).

"The fact that discovery may involve inconvenience and expense is not sufficient, standing alone, to support a stay of discovery." *Kor Media*, 294 F.R.D. at 583 (citation omitted). "[T]here must be *no question* in the court's mind that the dispositive motion will prevail, and therefore, discovery is a waste of effort." *Trzaska v. Int'l Game Tech.*, No. 2:10-cv-02268-JCM-GWF, 2011 WL 1233298, at *3 (D. Nev. Mar. 29, 2011) (emphasis original).

Under the more lenient "good cause" approach, courts evaluate: (1) whether the dispositive motion can be decided without further discovery; and (2) whether good cause exists to stay discovery. *See Schrader v. Wynn Las Vegas, LLC*, 2:19-cv-02159-JCM-BNW, 2021 WL 4810324, at *4 (D. Nev. Oct. 14, 2021) (citations omitted). Good cause may exist if the moving

4

party convinces the court the plaintiff cannot state a claim. *Id*. It may also exist when other factors are present, such as undue burden or expense or prejudice. *Id*.

This court has used the preliminary peek approach to assess whether a stay is warranted pending resolution of a dispositive motion.

**B. The United States**

Plaintiff alleges in the FAC that he was terminated for refusing to engage in conduct that Plaintiff believed to be illegal: failure to arrest an individual during a DUI traffic stop even though he lacked probable cause to do so; failure to carry out lawful directives and orders related to his refusal to arrest an individual no November 15, 2021, when it would have been unlawful to do so; the failure to follow an alleged order to place on individual in the back of his patrol vehicle on February 20 2022, when doing so would have been illegal. Plaintiff further alleges the United States violated the implied covenant of good faith and fair dealing and terminated him from the Washoe Tribe in bad faith. (ECF No. 59 at 41-45.)

The United States argues that Plaintiff did not present these tort claims to the federal agency, but alleged only that he was not afforded due process before being fired, which they assert is a different right, with a different source, that the state tort law claims asserted in the FAC. Additionally, the incident dates mentioned in the FAC are absent from Plaintiff's exhaustion form. For these reasons, the United States contends the court lacks subject matter jurisdiction over the claims asserted against it.

The United States is generally immune from suit unless there is a clear waiver of that immunity. *See Dep't of Ag. Rural Devel. Rural Housing Service v. Kirtz*, 601 U.S. 42, 48 (2024) (citations omitted). Subject to certain exceptions, the FTCA waives sovereign immunity for certain torts committed by federal employees acting within the scope of their employment.

*Brownback v. King*, 592 U.S. 209, 212 (2021) (citation omitted). "The timely filing of an administrative claim is a jurisdictional prerequisite to the bringing of a suit under the FTCA[.]" *Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980) (citation omitted).

Plaintiff's response to the United States' motion to stay discovery does not address the argument that he failed to exhaust administrative remedies with the federal agency before filing this action.

The court finds that the United States' motion to dismiss is potentially dispositive of all of the claims asserted against it, and the motion can be decided without additional discovery. Moreover, the court has taken a preliminary peek at the motion and is convinced the United States will likely be successful in achieving the dismissal of these claims based on Plaintiff's failure to exhaust administrative remedies, which is a jurisdictional prerequisite to filing suit.

For these reasons, the United States' motion to stay discovery pending resolution of its motion to dismiss is granted.

**C. The Tribal Defendants**

The Tribal Defendants argue that discovery should be stayed while the court resolves the threshold issue of sovereign immunity. They argue that tribal sovereign immunity extends to them, as agents and officers of the Tribe, as they were acting in their official capacities and within the scope of their authority.

Plaintiff argues that pursuant to *Lewis v. Clarke*, 581 U.S. 155 (2017), when claims are asserted against a tribal employee in his or her individual capacity for a tort committed within the scope of employment, the employee is the real party in interest and tribal sovereign immunity is not implicated.

In their reply brief, the Tribal Defendants argue that the facts are distinguishable from those in *Lewis v. Clarke*.

The Tribal Defendants' motion is potentially dispositive of the claims asserted against them, and it can be decided without conducting additional discovery. However, the court has taken a preliminary peek at the Tribal Defendants' motion to dismiss, and the court is not convinced that the Tribal Defendants are likely to succeed on their argument that the court lacks subject matter jurisdiction over the claims asserted against them on the basis of tribal sovereign immunity.

A tribe has sovereign immunity from suit. *Lewis v. Clarke*, 581 U.S. 155, 157 (2017) ("Indian tribes are generally entitled to immunity from suit."). "[W]hen a defendant timely and successfully invokes tribal sovereign immunity, [the court] lacks subject matter jurisdiction." *Acres Bonusing, Inc. v. Marston*, 17 F.4th 901, 908 (citations omitted).

The court is not convinced the Tribal Defendants will succeed on their motion to dismiss on the basis that the court lacks subject matter jurisdiction over these claims because the Washoe Tribe's sovereign immunity extends to them.

In *Lewis v. Clarke,* the plaintiffs were driving on an interstate in Connecticut when a vehicle driven by Clarke struck their vehicle. Clarke was an employee of the tribe's gaming authority, and he was transporting customers from a tribal casino back to their homes. *Lewis,* 581 U.S. at 160. The plaintiffs sued Clarke in his individual capacity in state court. *Id.* Clarke filed a motion to dismiss for lack of subject matter jurisdiction on the basis of tribal sovereign immunity because he was acting within the scope of his employment with the tribe when the accident occurred. *Id.*

The Supreme Court granted certiorari to determine, as is pertinent here, "whether the sovereign immunity of an Indian tribe bars individual-capacity damages against tribal employees for torts committed within the scope of their employment[.]" *Id*. at 161.

Preliminarily, the Supreme Court noted the fact that a plaintiff has not named the sovereign itself (the tribe), is not determinative of whether sovereign immunity applies. *Id*. at 161-62 (citations omitted).

Next, the Supreme Court reiterated that when a person is sued in his individual or personal capacity, the lawsuit "seek[s] to impose *individual* liability upon a government officer for actions taken under color of state law." *Id*. at 162 (citations and quotation marks omitted, emphasis original). In that case, the real party in interest "is the individual, not the sovereign." *Id*. at 163. "Defendants in an official-capacity action may assert sovereign immunity[,]" while "[a]n officer in an individual-capacity action … may be able to assert *personal* immunity defenses[.]" *Id*. (citation omitted, emphasis original). These general principles apply in the context of tribal sovereign immunity. *Id*.

The Court then pointed out that Clarke was sued for negligence arising out of a tort that occurred on an interstate in Connecticut. The lawsuit was brought against a tribal employee who was operating a vehicle within the scope of his employment, but on state lands. Clarke was not sued in his official capacity, but he was sued "to recover for his personal actions[.]" *Id*. In that case, the judgment would not operate against the tribe. The Court determined this was the case even if there was an indemnification provision as the inquiry rests on "who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab." *Id*. at 165.

1  "[A]lthough tribal sovereign immunity is implicated when the suit is brought against individual officers in their official capacities, it is simply not present when the claim is made against those employees in their individual capacities." *Id*. at 167-68.

In *Acres Bonusing, Inc. v. Martson*, 17 F.4th 901 (9th Cir. 2021), a tribe sued Acres Bonusing, Inc. (ABI) and its owner in tribal court over a dispute regarding a casino gaming system. ABI subsequently sued various tribal defendants, including the tribal judge and his law clerks, lawyers representing the tribe, and as other tribal officials, in federal court. *Acres*, 17 F.4th at 905. The district court dismissed the case, finding that sovereign immunity applied to all of the defendants. *Id*.

The question presented in *Acres* was whether the lawsuit for damages against tribal official defendants in their individual capacities should have been dismissed on tribal sovereign immunity grounds. *Id*. at 907. The Ninth Circuit answered that question in the negative, and the court reversed the district court's decision. *Id*. at 908. The Ninth Circuit relied on *Lewis* as well as its own prior cases decided in line with *Lewis*. *Id*. at 908-910 (citing *Pistor v. Garcia*, 791 F.3d 1104 (9th Cir. 2015); *Maxwell v. County of San Diego,* 708 F.3d 1075 (9th Cir. 2013)). It reiterated the fact that a tribal employee acting within the scope of his or her employment is insufficient to invoke the protections of sovereign immunity. *Id*. at 909 (citation omitted).

The Ninth Circuit discussed its decision in *Pistor v. Garcia*, where gamblers at a tribal casino who were handcuffed and detained in an interrogation room and had property taken from them sued the chief of the tribal police department, the general manager of the casino, and a tribal gaming office inspector for damages under state tort law and for constitutional claims under section 1983. *Id.* at 909-910 (citing *Pistor*, 791 F.3d at 1108-09.) In *Pistor*, the Ninth Circuit held that tribal sovereign immunity did not extend to the claims against the tribal

9

defendants because they "were sued in their individual rather than their official capacities, [and] any recovery [would] run against the individual tribal defendants rather than the tribe." *Pistor*, 791 F.3d at 1108. The tribe itself was not being sued, and the plaintiffs were not seeking money from the tribal treasury. Like *Lewis*, the court found that even if the tribe had agreed to indemnify the tribal officers such that it would ultimately pay for any liability attributed to the tribal officers, that would "not make the officer immune that liability." *Id*. at 1114 (citation and quotation marks omitted).

Next, the Ninth Circuit discussed its earlier decision in *Maxwell v. County of San Diego*, where tribal employees were sued for damages for allegedly providing inadequate medical care. The Ninth Circuit again held that tribal sovereign immunity did not apply where the tribal paramedics were sued in their individual capacities for money damages. *Acres*, 17 F.4th at 910 (citing *Maxwell*, 708 F.3d at 1089).

Based on *Lewis*, *Pistor*, and *Maxwell*, the Ninth Circuit concluded in *Acres* that tribal sovereign immunity did not bar the suit against the tribal defendants sued in their *individual* capacities for money damages. *Id*. "Any relief ordered by the district court will not require [the tribe] to do or pay anything." As such, the tribe was not the real party in interest and there was no tribal sovereign immunity. *Id*.

Here, Westbrook, Leonard, Hall, and Burk are each sued in their individual capacities for damages. (ECF No. 59 at 5 ¶¶ 25-28.) The FAC contains detailed factual allegations about each of the Tribal Defendants' involvement and conduct that Plaintiff claims is actionable, such that this is not a case where the Plaintiff is trying to assert liability of the tribe on the basis of vicarious liability.

1    The Tribal Defendants argue that *Lewis* is distinguishable because the allegations
2 implicate the tribe's ability to govern itself, the conduct took place on tribal land, and the Tribal
3 Defendants in this case were engaged in official duties.
4    The Ninth Circuit, however, rejected these same arguments in *Acres*. It first addressed the
5 district court's determination that the defendants were "functioning as the Tribe's officials or
6 agents when the alleged acts were committed," and the defendants' argument that sovereign
7 immunity extended to tribal officials when "they act in their respective official capacities and
8 within the scope of the authority the Tribe lawfully may confer upon them." *Acres*, 17 F.4th at
9 910. *Acres* reiterated its conclusion in *Pistor*: "'tribal defendants sued in their *individual*
10 capacities for money damages are not entitled to sovereign immunity, even though they are sued
11 for actions taken in the course of their official duties.'" *Id*. (quoting *Pistor*, 791 F.3d at 1112).
12    The argument was asserted in *Acres* that sovereign immunity applied because the conduct
13 allegedly occurred in tribal court and was "part of the Tribe's inherently sovereign functions"
14 such that "adjudicating [the] dispute would require the court to interfere with the tribe's internal
15 governance." *Id*. at 911 (citation omitted). The Ninth Circuit rejected this reasoning, concluding
16 the tribal sovereign immunity analysis does not "turn on a freestanding assessment of whether
17 the suit related to tribal governance in some way." *Id*. "The tribal sovereign immunity inquiry …
18 does not revolve around whether issues pertaining to tribal governance would be touched on in
19 the litigation." *Id*. The Ninth Circuit explained, "if that were the test, we would seemingly end up
20 applying tribal sovereign immunity whenever a tribal employee was acting within the scope of
21 her employment—which is precisely what the Supreme Court in *Lewis* said not to do." *Id*.
22    The Ninth Circuit pointed out that in *Pistor,* a suit against tribal police and gaming
23 officials, involving allegations that were related to "a core function of the sovereign," and "could

11

well involve consideration of the tribe's law enforcement practices[.]" *Id*. Yet, sovereign immunity did not extend to the tribal officials in that case.

The Ninth Circuit also dismissed the argument that *Lewis* created special rules for "garden variety" torts. *Id*.

The court is also not persuaded by the Tribal Defendants' argument that *Lewis* is distinguishable because the conduct at issue took place on tribal land, but the conduct in *Pistor* took place in a tribal casino, and the conduct in *Acres* took place in a tribal court.

The Tribal Defendants may have personal immunity defenses to which they mail avail themselves, *Acres,* 17 F.4th at 914 (citation omitted), but it does not appear that they will be successful in achieving dismissal of the claims asserted against them on the basis of tribal sovereign immunity.

For these reasons, the Tribal Defendants' motion to stay discovery pending resolution of their motion to dismiss is denied.

### III. CONCLUSION

The motion to stay discovery filed by the United States (ECF No. 71) pending resolution of its motion to dismiss is **GRANTED**.

The motion to stay discovery filed by the Tribal Defendants (ECF No. 64) pending resolution of its motion to dismiss is **DENIED**.

**IT IS SO ORDERED**.

Dated: September 3, 2024

_____
Craig S. Denney
United States Magistrate Judge