UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL ERWINE, | Case No. 3:24-cv-00045-MMD-CSD |
| Plaintiff, | ORDER |
| v. | |
| CHURCHILL COUNTY, *et al.,* | |
| Defendants. | |

**I.  SUMMARY**

Plaintiff Michael Erwine sued Defendants Sheriff Benjamin Trotter and Churchill County, the United States of America, Michel Hall, John Leonard, Zachary Westbrook, and Gene Burke for alleged violations of his rights under the federal and state Constitution, and Nevada state law, generally arising out of his tenure and termination as a police officer with first Churchill County and later the Washoe Tribe of Nevada and California ("Washoe Tribe"). (ECF No. 59 ("FAC").) Before the Court are: (1) Erwine's motion to alter or amend the Court's order dismissing his remaining claims against the United States (ECF No. 110);[1] (2) Defendants Michel Hall, John Leonard, and Zachary Westbrook's (collectively, the "Washoe Tribe Defendants") motion to dismiss Erwine's claims against them (ECF No. 111-1 (the "Motion"));[2] and (3) the Washoe Tribe

---

[1] The United States responded (ECF No. 112) and Erwine replied (ECF No. 113).

[2] Erwine responded (ECF No. 115) and the Washoe Tribe Defendants replied (ECF No. 117). *Pro se* Defendant Gene Burke joined the Motion (ECF No. 114) and the reply (ECF No. 116). Gene Burke, like Washoe Tribe Defendants, is sued in his individual capacity for actions he took while employed as the Washoe Tribe's General Counsel. (ECF No. 59 at 5.) This makes him similarly situated to Washoe Tribe Defendants in all pertinent respects. (*Id.* (similarly suing Washoe Tribe Defendants in their individual capacities for actions they took while employed by the Washoe Tribe).) The Court

1  Defendants' motion for leave to file supplemental authority in support of their Motion (ECF
2  No. 118).³ As further explained below, the Court will deny Erwine's motion to alter or
3  amend the Court's prior order dismissing his remaining claims against the United States
4  because he merely rehashes arguments the Court has already rejected in it, and grant
5  Washoe Tribe Defendants' Motion because they are entitled to immunity and the Washoe
6  Tribe must—but cannot—be joined. Following this order, Erwine will be proceeding only
7  on his claims against Sheriff Benjamin Trotter and Churchill County.

**II.    BACKGROUND**

The Court incorporates by reference its description of the allegations in both Erwine's original complaint and operative FAC from its prior order granting Erwine's motion for leave to file an amended complaint. (ECF No. 58 at 2-3.) Those factual allegations remain the pertinent factual allegations before the Court.

Only Trotter and Churchill County opposed Erwine's motion to amend, arguing that amendment would be futile. (*Id.* at 3-4.) Under the liberal standard governing motions to amend, the Court found that amendment would not necessarily be futile and granted Erwine leave to amend his complaint. (*Id.* at 4-6.) Because the Court granted Erwine leave to file an amended complaint, it denied then-pending motions to dismiss filed by Washoe Tribe Defendants and the United States as moot. (*Id.* at 7.)

---

accordingly groups Burke in with the Washoe Tribe Defendants in addressing their Motion.

³Erwine responded (ECF No. 119) and the Washoe Tribe Defendants replied (ECF No. 120). Erwine does not oppose the motion and instead argues the merits of why *Maverick Gaming LLC v. United States*, 123 F.4th 960 (9th Cir. 2024) should not change the Court's analysis or support the Court dismissing his claims against Washoe Tribe Defendants. (ECF No. 119.) Both because Erwine does not oppose this motion, and because *Maverick Gaming* is precedential as to the Fed. R. Civ. P. 19 argument that Washoe Tribe Defendants make in their Motion, the Court grants the motion for leave to file supplemental authority and considers the parties' arguments regarding *Maverick Gaming* in the portion of its analysis discussing Washoe Tribe Defendants' Rule 19 argument.

2

Washoe Tribe Defendants and the United States subsequently stipulated with Erwine to dismiss his tenth, eleventh, and thirteenth claims asserted in his FAC. (ECF No. 88.) The Court granted that stipulation (ECF No. 89) and denied one of the United States' motions to dismiss pending at that time as moot (ECF No. 91). Later, the Court dismissed Erwine's remaining claims against the United States. (ECF No. 107.) Erwine moves to alter or amend that order. (ECF No. 110.)

Meanwhile, Washoe Tribe Defendants had again moved to dismiss Erwine's remaining claims asserted against them in the FAC, but subsequently moved for leave to supplement that motion following an order from United States Magistrate Judge Craig S. Denney rejecting one of the arguments they raised in their motion to dismiss while also suggesting other arguments might be available to them. (ECF No. 108 (summarizing this).) The Court exercised its discretion to deny both of Washoe Tribe Defendants' motions pending at that time without prejudice and permitted them to re-file a motion to dismiss that complied with the page limits set out in the Court's local rules and contained all the arguments Washoe Tribe Defendants wanted to make. (*Id.*) The Motion followed. (ECF No. 111-1.)

**III.   DISCUSSION**

The Court first addresses Erwine's motion seeking reconsideration of the Court's prior order dismissing his remaining claims against the United States, and then addresses the Washoe Tribe Defendants' Motion.

**a. Motion to Alter or Amend**

Erwine argues that the Court clearly erred when it ruled he had not properly exhausted his administrative remedies and accordingly dismissed his two remaining claims against the United States because his administrative claim form stated that he had been terminated, and that was enough. (ECF No. 110.) The United States counters that Erwine has not shown clear error because the Court's ruling was at least debatably correct, and he otherwise improperly rehashes old arguments he made in response to the

3

United States' pertinent motion to dismiss that the Court implicitly or explicitly rejected. (ECF No. 112.) The Court agrees with the United States.

The Court noted in its order that Erwine would like the Court to reconsider that Erwine, "made several arguments and cited to several cases not discussed above[,]" which the Court did not discuss because "they do not affect the outcome of the Motion before the Court[.]" (ECF No. 107 at 4.) As the United States argues (ECF No. 112 at 2-3), all Erwine does in his pending motion is rehash those same arguments the Court already rejected (*Compare* ECF No. 72 at 3-5 *with* ECF No. 110 at 2-6 (citing generally the same cases and making the same arguments)). "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005) (citation omitted). The Court will deny Erwine's motion. (ECF No. 110.)

### b. Washoe Tribe Defendants' Motion

Because the Court alternatively agrees with Washoe Tribe Defendants' absolute immunity and Rule 19 arguments, the Court addresses only those two arguments below, and then explains why it will not grant Erwine leave to amend his claims against Washoe Tribe Defendants and Burke.

*i. Absolute Immunity*

The Washoe Tribe Defendants first argue that they are entitled to absolute immunity from Erwine's claims against them under tribal law because, "[t]ribal officials, like federal and state officials, can invoke personal immunity defenses" *Acres Bonusing, Inc v. Marston*, 17 F.4th 901, 915 (9th Cir. 2021). (ECF No. 111-1 at 2, 6-11.) Erwine counters that Washoe Tribe Defendants misread the tribal law they proffer, a case Washoe Tribe Defendants rely on only applies to Burke, and Washoe Tribe Defendants' conduct as alleged in the FAC went beyond the scope of their official duties. (ECF No. 115 at 3-8.) Washoe Tribe Defendants reply in pertinent part that their motives are legally

irrelevant, and Erwine alleges actions all within the scope of their authority. (ECF No. 116 at 4.) The Court agrees with Washoe Tribe Defendants.

Washoe Tribe Defendants make this argument with reference to Title 33 of the Law & Order Code of the Washoe Tribe of Nevada and California, the Washoe Sovereign Immunity Code. (ECF No. 111-1 at 7-8 (citing Washoe Tribal Code § 33, *available at* https://perma.cc/5EE6-8PFB).) Generally, the Court may not consider materials outside the pleadings when ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). One exception to this general rule is judicial notice under Fed. R. Evid. 201, which "permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Id.* at 998-99. The words of the Washoe Tribal Code are not subject to reasonable dispute. Erwine does not dispute them or argue the Court should not consider Title 33 in ruling on the Motion. (ECF No. 115 at 3-8.) He instead argues for a different interpretation of Title 33. (*Id.*) But in so doing, he does not appear to contest the legitimacy of the Court interpreting Title 33 in ruling on the Motion. And indeed, other courts have taken judicial notice of laws and regulations promulgated by sovereign tribes. *See, e.g.*, *N. Cnty. Cmty. All., Inc. v. Salazar*, 573 F.3d 738, 740, 746 n.1 (9th Cir. 2009) (taking judicial notice of the Nooksack Indian Tribe's gaming ordinance and a letter interpreting it); *Rosales v. Dutschke*, 279 F. Supp. 3d 1084, 1088 n.2, 1092 n.4 (E.D. Cal. 2017) (taking judicial notice of the Jamul Indian Village's gaming ordinance and a compact between it and the State of California), *aff'd*, 787 F. App'x 406 (9th Cir. 2019) (affirming dismissal of the case for failure to join a necessary party, a tribe, which could not be joined because of tribal sovereign immunity). The Court accordingly takes judicial notice of Title 33 of the Washoe Tribe's Law & Order Code.

Section 33-30-010 of Title 33 provides that, "[t]he sovereign immunity of the Tribe shall include but not be limited to any lawsuit, action, claim, controversy or process, in any state, federal, or Tribal court, forum, or tribunal, unless such immunity is clearly, explicitly and unequivocally waived in accordance with this Title." Claim, "means any

written demand to recover damages from the Tribe or Tribal Entity, or an officer or employee of the Tribe or Tribal Entity, while engaged in work assigned or controlled by the Tribe or Tribal Entity." Washoe Tribal Code § 33-20(2). And "Employee" "means any person who performs work assigned or controlled by the Tribe or Tribal Entity[,]" excluding independent contractors. *Id.* § 33-20(3). Finally, an "Officer" "means a person serving at the request or direction of the Tribe as a director, officer, or manager of a Tribal Entity according to a Charter" that is not a member of the Tribal Council. *Id.* § 33-20(10).

Based on the allegations in the FAC, Washoe Tribe Defendants (and Burke) were either officers or employees of the Washoe Tribe "at all times relevant to" it. (ECF No. 59 at 5.) Section 33-30-010 of Title 33 provides that the Washoe Tribe's sovereign immunity precludes any claim asserted against it in federal court, and "claim" is in turn defined to mean in pertinent part any written demand to recover damages from officers or employees while engaged in their work assigned or controlled by the Tribe. *See id.* § 33-20(2). The FAC is a written demand that seeks damages against Washoe Tribe Defendants and Burke, who, as noted, were officers or employees of the Washoe Tribe during the pertinent time. (ECF No. 59 at 5 (specifying that pertinent defendants were officers or employees), 15-27 (detailing factual allegations regarding Erwine's employment with the Washoe Tribe), 57 (seeking damages).) And while it is true that the Washoe Tribe uses the phrasing "Sovereign Immunity" instead of "Absolute Immunity" in describing the immunity it bestowed on Washoe Tribe Defendants and Burke through Title 33, it unequivocally immunizes tribal officers and employees from demands to recover damages arising from work they do for the Tribe in the pertinent section. *See* Title 33, § 33-20(2). This provision immunizes Washoe Tribe Defendants and Burke from Erwine's claims so long as his allegations reflect that they were performing their official duties. The Court rejects Erwine's contrary interpretation of the Washoe Tribe's Title 33 as unsupported by its plain language.

///

Moreover, it has long been established that the Washoe Tribe may, "accord absolute privilege to its officers within the areas of tribal control." *Davis v. Littell*, 398 F.2d 83, 84 (9th Cir. 1968). In *Davis*, unlike here, the United States Court of Appeals for the Ninth Circuit found that the Navajo Nation had not bestowed such immunity on its General Counsel through its tribal law, but nonetheless found that the general counsel sued in that case was immunized from a defamation suit brought by a subordinate attorney who reported to him because he was entitled to a similar sort of immunity to the absolute immunity Washoe Tribe Defendants assert here. *See id.* at 84-86. The Ninth Circuit further suggested in *Davis* that an important factor justifying its decision to extend immunity to the general counsel—not a member of the Navajo Nation but employed by it—was that he was sued for essentially giving a negative performance review, a task within the scope of his official job duties. *See id.* at 85.

Erwine attempts to limit *Davis*, arguing that it only suggests shielding Burke from liability because *Davis* is specifically about a tribal general counsel, has been effectively overruled by *Lewis v. Clark*, 581 U.S. 155, 163 (2017), and does not apply to the conduct Erwine alleges Washoe Tribe Defendants to have committed, which was outside the scope of their official duties. (ECF No. 115 at 4-8.) Before addressing Erwine's latter arguments in more detail, the Court addresses the former. The Court does not read *Davis* as necessarily limited to only those tribal employees or officers holding the specific job title of general counsel. Indeed, the *Davis* court itself said that the key question in determining whether immunity should extend to a particular tribal official's role was, "whether it encompasses public duties, official in character[.]" 398 F.2d at 85. Washoe Tribe Defendants were sergeants and police chiefs during the pertinent times. (ECF No. 59 at 5.) These jobs encompass public duties that are official in character.

In addition, the Court's research does not indicate that *Davis* has been overruled, whether by *Lewis* or otherwise. *Lewis* did not discuss *Davis*, and it dealt with a car accident, not the sort of employee discipline, hiring, and firing at issue both in *Davis* and

7

in this case. *See generally Lewis*, 581 U.S. 155. And courts in other more recent cases continue to rely on *Davis* and treat it as good law. For example, another court in this District examined *Davis* in a 2015 decision ultimately determining that tribal sovereign immunity did not shield a law firm that had performed work for a tribe from complying with a subpoena. *See Grand Canyon Skywalk Dev., LLC v. Cieslak*, No. 2:13-cv-00596-JAD, 2015 WL 3551305, at *3 (D. Nev. June 5, 2015), *objections overruled*, No. 2:15-cv-00663-JAD-GWF, 2016 WL 890921 (D. Nev. Mar. 7, 2016). That court similarly understood *Davis* as supporting the application of absolute immunity to claims against higher-level tribal employees who were engaged in the public affairs of the pertinent tribe. *See id.* And nothing contained in the discussion in that case suggested that court understood *Davis* had been overruled, whether by *Lewis* or otherwise. The Ninth Circuit distinguished *Davis* in *Stock W. Corp. v. Taylor*, 942 F.2d 655, 665 (9th Cir. 1991), *on reh'g*, 964 F.2d 912 (9th Cir. 1992), but nonetheless treated it as good law and relied on it in part to distill out the rule that, "tribe members, including officials, are amenable to suit if the subject of the suit is not related to the officials' performance of official duties." *Id.* Finally, the Ninth Circuit indicated that *Davis* was not overruled by *Lewis* in *Acres Bonusing*, in explaining that *Davis* involved the personal defense of absolute immunity, which is a different question than whether tribal sovereign immunity applies—and *Lewis* is a tribal sovereign immunity decision. *See Acres Bonusing*, 17 F.4th at 913 n.4; *see also id.* at 908-11 (explaining *Lewis* provides the tribal sovereign immunity framework).

The Court accordingly finds that Washoe Tribe Defendants (and Burke) are entitled to absolute immunity from Erwine's claims so long as his claims against them, appropriately construed, arise out their performance of their official duties. And the Court additionally emphasizes that the facts here are stronger for Washoe Tribe Defendants and Burke than those in *Davis* because—as the Court found above—the Washoe Tribe's law explicitly provides them immunity from written demands for damages arising out of

their official duties. As mentioned, the *Davis* court found such immunity implied even in the absence of the sort of statute pertinent here. *See generally* 398 F.2d 83.

That brings the Court to Erwine's remaining argument, which is that he alleges conduct going beyond defamation or routine personnel management, instead alleging a pattern of discrimination and retaliation—and thus Title 33 immunity cannot shield Washoe Tribe Defendants and Burke from his claims against them. (ECF No. 115 at 5-7.) But even construing Erwine's pertinent allegations in the light most favorable to him, the Court does not find that Erwine plausibly alleges conduct outside the scope of Washoe Tribe Defendants (and Burke)'s official duties. Erwine alleges that Hall attempted to dissuade him from filing a report against another officer Erwine had gotten into a dispute with. (ECF No. 59 at 18.) He alleges that Westbrook singled him out at a meeting, stated he hired Erwine when nobody else would so Erwine owed Westbrook, and told Erwine he could fire him. (*Id.*) Erwine otherwise alleges Westbook put him on a performance improvement plan following another incident involving a different officer. (*Id.* at 18-19.) While Erwine does allege that Westbrook was upset with him for 'dragging' him through the grievance review process and threw some of his stuff off Westbrook's desk, started calling him 'busdriver' after a newspaper article featuring Erwine was published, and otherwise was not nice to Erwine, Erwine's allegations against Westbrook nonetheless focus on Westbrook's decision to fire him following several other incidents described in the FAC where Erwine was at least arguably at fault. (*Id.* at 19-25.) Similarly, Erwine's allegations against Leonard, Hall, and Burke focus on their participation in the disciplinary process concluding with his termination from the Washoe Tribe, and in Burke's case, Erwine's attempts to contest his termination. (*Id.*) Overall, while some of the interactions described in the FAC as part of this process sound unprofessional or salty, the gist of Erwine's allegations against Washoe Tribe Defendants and Burke is that they fired him without proper cause. These actions all fall within the scope of their official duties, which,

as supervisory police officers and the Washoe Tribe's general counsel, logically include disciplining and firing employees.

In sum, the Court finds that Title 33 of the Washoe Tribe's Law and Order Code bestowed absolute immunity on Washoe Tribe Defendants and Burke for their alleged actions described in the FAC—disciplining and ultimately firing Erwine—falling within the scope of their official duties. "[T]he rule of privilege is not founded on the need of the individual officer, but on the public need for the performance of public duties untroubled by the fear that some jury might find performance to have been maliciously inspired." *Davis*, 398 F.2d at 85. That need is operative here. The Court accordingly grants the Motion and will dismiss Erwine's claims against Washoe Tribe Defendants and Burke on this basis.

### ii. Rule 19

Washoe Tribe Defendants and Burke otherwise argue that the Washoe Tribe is a necessary party to this case, but the Washoe Tribe cannot be joined because of its sovereign immunity, so Erwine's claims against Washoe Tribe Defendants and Burke must be dismissed on this alternative basis as well. (ECF No. 111-1 at 21-24.) Erwine counters that the Washoe Tribe is not a necessary party to this case because he seeks only damages against Washoe Tribe Defendants and Burke in their individual capacities, so the Court can accord complete relief between the parties without the Washoe Tribe's involvement. (ECF No. 115 at 18-20.) Washoe Tribe Defendants emphasize in pertinent part in reply that the Washoe Tribe is not a required party because it has a financial stake in this case, but instead because this case implicates its sovereign interests—control over its police department. (ECF No. 117 at 11.) The Court again agrees with Washoe Tribe Defendants.

Whether the Washoe Tribe is a necessary party under Rule 19(a) depends on whether it, "has a legally protected interest in the lawsuit that may be impaired or impeded in the Tribe's absence." *Maverick Gaming*, 123 F.4th at 972. The legally protected interest

10

must be more than a financial stake, but there is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a), necessitating a practical and fact-specific inquiry. *See id.* A legally protected interest may be one that impairs the Washoe Tribe's sovereignty, such as its ability to govern itself. *See Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 852-53, 856 (9th Cir. 2019).

And indeed, that is what Washoe Tribe Defendants argue here. They argue the Washoe Tribe is a necessary party because Erwine seeks to hold them personally liable for actions they took as tribal officers and employees in response to complaints they received about Erwine's professional conduct. (ECF No. 111-1 at 22-23.) They further highlight how Erwine includes allegations against the Washoe Tribe's chairman but do not name him as a defendant, and ultimately contests his firing by the Washoe Tribe— neither the Washoe Tribe Defendants nor Burke employed Erwine. (*Id.*) They thus argue Erwine's claims against them implicate the Washoe Tribe's sovereignty because Erwine's claims implicate the Washoe Tribe's ability to control the operations of its police department. (*Id.*) Erwine's primary response to these arguments is to reiterate that his claims do not implicate the Washoe Tribe because he only seeks to recover damages against Washoe Tribe Defendants and Burke in their individual capacities, though he also argues requiring the Washoe Tribe's joinder here would undermine *Lewis*, which emphasized the distinction between individual and official capacity suits, and let damages claims proceed against an individual tribal employee who caused a car accident while driving a limousine for his employer, the Mohegan Sun Casino. (ECF No. 115 at 19-20.) *See also Lewis*, 581 U.S. at 160 (describing the specific facts of that case).

Erwine fails to really engage with Washoe Tribe Defendants' pertinent arguments, but regardless, the Court finds Washoe Tribe Defendants' view more persuasive. Based on the Court's review of the pertinent portion of the FAC, Erwine's claims against Washoe Tribe Defendants and Burke are based on his discipline for potential violation of the Washoe Tribe police department's policies, and termination by the Tribe. (ECF No. 59 at

1    15-27.) Accepting Erwine's view that he should not have been disciplined following the
2    various incidents he was involved in and not fired by the Washoe Tribe (including his
3    apparent allegation that the Tribal Chairman, who he did not name as a defendant, should
4    have intervened on his behalf to prevent his firing) would require the Court to evaluate
5    the Washoe Tribe's employment policies at its police department and determine whether
6    or not they have been violated. The detailed review of the Washoe Tribe's policies as
7    applied to the facts of Erwine's termination this would require would impinge on the
8    Washoe Tribe's ability to govern itself. *See Davis*, 398 F.2d at 84 ("the Navajo Tribe
9    enjoys sufficient independent status and control over its own laws and internal
10   relationships"). The Washoe Tribe is accordingly a necessary party to this case. *See Dine*
11   *Citizens*, 932 F.3d at 853 (finding the tribe was a necessary party in part because "the
12   litigation could affect already-negotiated lease agreements[,]" which the Court views as
13   analogous to preexisting employment policies); *Jamul Action Comm. v. Simermeyer*, 974
14   F.3d 984, 997 (9th Cir. 2020) (finding the tribe was a necessary party where its existing
15   sovereign and propriety interests—in the status of its land and recognition as a tribe—
16   would be impinged upon were the case permitted to proceed without the tribe as a party).

17          Indeed, and despite not being entirely factually analogous to this case, the Ninth
18   Circuit's recent Opinion in *Maverick Gaming*, 123 F.4th 960, supports this view. There,
19   the Ninth Circuit found that the district court had properly dismissed a private gaming
20   company's action seeking declaratory relief that would invalidate a trial gaming compact
21   permitting the Shoalwater Bay Indian Tribe to offer sports betting on its reservation
22   because the Shoalwater Bay Tribe was a necessary party who could not be joined
23   because it possesses sovereign immunity. *See generally id.* "The district court correctly
24   concluded that, because of the importance of tribal gaming compacts and the revenue
25   that these compacts provide to Washington's federally recognized tribes, as well as the
26   long history of tribal gaming and its associated benefits for the tribes and their surrounding
27   communities, Maverick's suit implicates the Tribe's legally protected economic and

sovereign interests." *Id.* at 972. Similarly, here, the investigation into the Washoe Tribe's employment policies and whether the Washoe Tribe complied with them in firing Erwine that evaluating Erwine's claims against Washoe Tribal Defendants and Burke would require implicates the Washoe Tribe's sovereign interest in setting and enforcing its own employment policies. *See Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002) (finding that a suit challenging a hiring policy giving preference to Navajo applicants embedded in a lease with the operator of a power plant on the Navajo reservation could not proceed without the Navajo Nation as a party (but then the case would be barred by sovereign immunity) because "a judgment rendered in the Nation's absence will impair its sovereign capacity to negotiate contracts and, in general, to govern the Navajo reservation."); *see also Knighton v. Cedarville Rancheria of N. Paiute Indians*, 922 F.3d 892, 904 (9th Cir. 2019) ("[T]he Court has made clear that a tribe also has sovereign authority to regulate nonmember conduct on tribal lands independent of its authority to exclude if that conduct intrudes on a tribe's inherent sovereign power to preserve self-government or control internal relations.") (citations omitted). The Court accordingly finds that *Maverick Gaming*—as Washoe Tribe Defendants argue—further supports their argument that the Washoe Tribe is a necessary party to this case.

Having concluded that the Washoe Tribe, "is a party required to be joined if feasible, the remaining steps of the Rule 19 analysis are straightforward." *Jamul Action Comm.*, 974 F.3d 984, 998. The Washoe Tribe is "protected by tribal sovereign immunity; its joinder in this action is therefore infeasible." *Id.*; *see also Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs*, 89 FR 944-02, 2024 WL 68476, at *946 (recognizing the Washoe Tribe of Nevada & California). And "[t]he balancing of equitable factors under Rule 19(b) almost always favors dismissal when a tribe cannot be joined due to tribal sovereign immunity." *Jamul Action Comm.*, 974 F.3d 984, 998 (citation omitted). The Court accordingly and

alternatively finds that this case must be dismissed because the Washoe Tribe is a necessary party who cannot be joined because of its sovereign immunity. Thus, the Court also grants the Motion for this reason.

*iii. Leave to Amend*

Erwine concludes his response to the Motion with the sentence, "[i]n other alternative, or grant leave to amend the Plaintiff's Complaint as applicable." (ECF No. 115 at 20.) The Court construes this sentence as a request for leave to amend if the Court grants the Motion. Washoe Tribe Defendants do not specify whether they seek dismissal of Erwine's claims against them with or without prejudice. (ECF Nos. 111-1, 117.) The Court nonetheless finds that dismissal with prejudice is appropriate here.

The Court has discretion to grant leave to amend and should freely do so "when justice so requires." Fed. R. Civ. P. 15(a); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Nonetheless, the Court may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Facts raised for the first time in a plaintiff's opposition papers should be considered by the Court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice. *See Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001).

To start, Erwine does not raise any new facts in his opposition to the Motion that would assist the Court in determining whether it should grant him leave to amend, nor does he offer any argument suggesting amendment would be anything other than futile. (ECF No. 115 at 20.) As noted, the Court may deny leave to amend where it would be futile. And the Court finds that allowing amendment of Erwine's claims against Washoe Tribe Defendants and Burke would be futile. Neither of the two bases for Court's alternative rulings above—immunity and failure to join a necessary party who cannot be

14

joined—can plausibly be amended around. Moreover, the Court has already granted Erwine an opportunity to amend. (ECF No. 58.) The Court accordingly declines to grant Erwine leave to amend his claims against Washoe Tribe Defendants and Burke.

**IV.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Erwine's motion to alter or amend (ECF No. 110) is denied.

It is further ordered that Washoe Tribe Defendants' motion to dismiss (ECF Nos. 111, 111-1) is granted.

It is further ordered that Erwine's claims against Zachary Westbrook, John Leonard, Michel Hall, and Gene Burke are dismissed, with prejudice.

It is further ordered that Washoe Tribe Defendants' motion for leave to file supplemental authority (ECF No. 118) is granted.

DATED THIS 13th Day of March 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE