# EXHIBIT 19

Excerpts from the Deposition of Detective Jerry Bowden, taken October 30, 2025

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL ERWINE, | ) |
| Plaintiff, | ) Case No.: |
| v. | ) 3:24-cv-00045-MMD-CSD |
| UNITED STATES OF AMERICA, et al., | ) |
| Defendant. | ) |
| ______________________________ | ) |

RECORDED DEPOSITION OF DETECTIVE JERRY BOWDEN

Taken on October 30, 2025

At 9:06 a.m.

RECORDED VIA VIDEO CONFERENCE UNDER

STIPULATION BY ALL PARTIES

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF NEVADA

MICHAEL ERWINE, )
Plaintiff, ) Case No.:
v. ) 3:24-cv-00045-MMD-CSD
UNITED STATES OF AMERICA, et al., )
Defendant. )
______________________________________)

RECORDED DEPOSITION OF DETECTIVE JERRY BOWDEN

Taken on October 30, 2025

At 9:06 a.m.

RECORDED VIA VIDEO CONFERENCE UNDER

STIPULATION BY ALL PARTIES

APPEARANCES:

For the Plaintiff:

LUKE BUSBY, ESQ.
LUKE ANDREW BUSBY, LTD.
316 California Avenue
Reno, Nevada 89509

For the Defendant:

KATHERINE F. PARKS, ESQ.
THORNDAL ARMSTRONG
6590 S. McCarran Blvd, Suite B
Reno, Nevada 89509

For the Deponent:

MARK DUNNIGAN
RENO CITY ATTORNEY'S OFFICE

INDEX


| | Direct | Cross | Redirect |
|---|---|---|---|
| MR. BUSBY | 5 | | 59 |
| MS. PARKS | | 42,57 | |
| MR. DUNAGAN | | 55 | |

Certificate of Record Page 64


EXHIBITS


| Number | Description | Page |
|---|---|---|
| Exhibit 1 | Letter | 17 |
| Exhibit 2 | Subpoena for Documents | 19 |
| Exhibit 3 | Memorandum 10/10/16 | 32 |
| Exhibit 4 | Email | 44 |
| Exhibit 5 | City of Reno - Lateral P.O. | 47 |
| Exhibit 6 | Memorandum - Washoe Tribe | 57 |

DEPOSITION OFFICER: We are now on the record in the matter of Michael Erwine v. United States of America, et al. My name is Alicia Staats. I'm the videographer and deposition officer. I work for E-Depositions, LLC, located at 750 Sandhill Road, suite 120, Reno, Nevada 89521. Today's date is October 30th, 2025, and the time is 9:06 a.m.

This is the video-recorded deposition of Detective Jerry Bowden and is being recorded via video conference under stipulation by all parties.

Prior to the deposition, per NRS 240.1997, the deponent did show me his ID.

And, Detective Bowden, can you please raise your right hand? Do you solemnly affirm that the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS: Yes.

DEPOSITION OFFICER: Thank you. Can you please state your full name with spelling?

THE WITNESS: Jerry Bowden. My first name is spelled J-E-R-R-Y. My last name is spelled B-O-W-D-E-N.

DEPOSITION OFFICER: Thank you. The electronic audio and visual recording of this deposition will be the official record. A transcript

will be created as an aid to the audio/video recording by E-Depositions, LLC.
Would all attorneys present please identify themselves, their firm, anybody with them, and the party they represent, beginning with the party noticing this proceeding?
MR. BUSBY: Good morning. Luke Busby representing Plaintiff Michael Erwine, who is listening in via Zoom.
MS. PARKS: Katherine Parks on behalf of Defendants Churchill County and Ben Trotter.
MR. DUNAGAN: Mark Dunagan with the Reno City Attorney's Office on behalf of Detective Bowden.
DEPOSITION OFFICER: All right. You guys are all set. Thank you.
EXAMINATION
BY MR. BUSBY:
**Q. Okay. Good morning, Detective. Thank you for coming today. Again, my apologies for setting this so early. Before we begin, I just want to go over some standard admonitions that are commonly given when a deposition is taken. But first I want to ask you if your deposition has ever been taken before?**
A. For this case? No.
**Q. For any other case, civil case?**

A. I've witnessed one, yes. I don't remember -- I don't recall, like, what it was about.

**Q. Okay. Do you recall how long ago that was?**

A. No.

**Q. Okay. Do you remember receiving admonitions at the beginning of that deposition just generally explaining the deposition process?**

A. No.

**Q. Okay. We'll go over them. So do you understand that you're under oath today just as you -- as if you were testifying in a court of law?**

A. Yes.

**Q. Okay. All right. And your deposition is being recorded by E-Depositions, who will transcribe what you say and provide a transcript of that as well as the video on audio recording. That being the case, it's important that we be able to create a clear record. So it -- I would just ask that you let me complete my questions before beginning your answer, and I'll be doing my best to do the same for you, okay?**

A. Okay.

**Q. Okay. If you don't understand a question, please let me know and I'll be glad to rephrase it. But if you answer a question, I'll take that to mean you understood what I was asking you, okay?**

A. Okay.
**Q. Okay. You also have the right to take breaks whenever you want, but I would just ask that you complete your answers to my question -- pending question before we take a break, okay? Sound good? Detective, did you hear me?**
A. Yeah.
**Q. Okay. Great. All right. What's your current occupation?**
A. I'm a detective for the Reno Police Department.
**Q. Okay. How long have you worked for RPD?**
A. Just -- just under 25 years. Twenty-five in January.
**Q. Wow. Okay. So did you start working there in, you know, 2001, 2002?**
A. 2001.
**Q. Okay. Great. And how long have you been a detective?**
A. Ten years.
**Q. Okay. And is that your current role within the department?**
A. Yes, backgrounds --
**Q. Okay.**
A. -- detective.

**Q. Okay. So you conduct background investigations for prospects who are looking for employment with the Reno Police Department, correct?**
A. Yes.
**Q. Okay. And how long have you been doing that?**
A. Ten years.
**Q. Okay.**
A. Just over ten.
**Q. Can you give me an estimate of how many of those investigations you've conducted?**
A. No. It'd be difficult to do that. A lot.
**Q. Okay. Okay. Does it work on a kind of a rolling basis? Are there always new recruits coming in looking for employment or are there certain times of the year where you do more than others?**
A. We have open hires. So like, that's changed in the last few years.
**Q. Okay. Around the 2016, 2017 period, was the process that you used to conduct background investigations essentially the same that -- as you use now?**
A. Yes. And some things changed.
**Q. Okay. Can you let me know what's changed?**
A. Just processes of, like, in terms of, like, who -- the chain of command.

**Q. Okay. Before what specifically what's changed?**

A. Back then it was more us dealing directly with the hiring authority. And now you have, like -- we just hired a backgrounds manager. That's different. It -- it goes up the chain now to the captain and so on.

**Q. Okay. Can you describe, in general terms, the steps involved in conducting a background investigation for a prospect -- a prospective police officer?**

A. Yeah. So once the person applies and they test and do all that stuff, then civil service gives us the name, and then we start contacting people based off that list. And then we put people in backgrounds from there.

**Q. Okay. Who do you begin to contact during the course of your investigation?**

A. Well, whatever candidates are on the list. So the names of those people, that's who we contact.

**Q. Oh. I was saying, when you are conducting an investigation of a particular police recruit, what are the steps involved in doing the investigation itself?**

A. The first step is, we contact them, they get a prescreen, they do the waivers and things of that

nature, and then it goes from there.

**Q. Okay. Where does it go from there?**

A. It goes until -- if -- once you -- if you go -- if you go past that point, then you go a deeper dive into their background.

**Q. Okay. And what does that deeper dive consist of?**

A. That consists of us contacting all the references, which would be employment, personal, relatives, neighborhood, employment, stuff like that.

**Q. Okay. Do you contact former employers?**

A. Yes.

**Q. How do you contact them?**

A. Via phone.

**Q. Okay. What if the former employer is a law enforcement agency? Are there any differences in how you would contact them?**

A. No. We contact them via phone.

**Q. Okay. Do you request records from former employers related to the -- the police recruit?**

A. They won't -- usually don't give you those records, so you have to go and see that stuff.

**Q. Oh, okay. So you usually have to actually physically go to the -- the other Police Department --**

A. Yes.

**Q. And request the records? Okay. Are you familiar with the statute, NRS 239B.020?**

A. Yes.

**Q. Okay. Do you --**

A. A little bit.

**Q. Okay. That statute relates to background investigations for law enforcement officers, correct?**

A. Yes. That's what we give employers, sometimes, who don't want to -- say they can't give us any information.

**Q. Okay. Is that when you're requesting documentary evidence from other agencies?**

A. Yes, but we don't -- they don't -- most agencies won't give you any documentation. You have to actually go view the files.

**Q. Okay. Do you take -- do you typically make copies of the files when you go and view them?**

A. No.

**Q. Okay. Do you make notes of what you observe in the files as part of the investigation process when you go and view them at another department?**

A. Yes.

**Q. Okay. And where -- where there's notes in the -- I mean, I assume there's a file for each applicant; is that correct?**

A. Yes.
**Q. Okay. So are there typically handwritten notes or something of that sort reflecting what you find in the records of other agencies?**
A. Yes. Sometimes, like --
**Q. Okay. And is it your understanding that based on that statute, NRS 239B.020, that you're entitled, as a matter of law, to review all records of a former public safety agency employer of a -- of a police recruit who's seeking employment with RPD?**
A. I'm not aware of to read it verbatim. I don't know.
**Q. Okay. What's your understanding of what the statute permits you to do?**
A. A lot of times, if the statute -- my understanding is, when agency particularly don't want to talk about it or give us any information, reference somebody who's applying to be a police officer or a firefighter, I -- I share that law with them, and then, typically, they'll talk about it.
**Q. Do you typically reach out to, let's say -- well, let me rephrase that.**
**In the case of a prospect for RPD, do you typically review all former public safety agency employment for that applicant when doing a background**

**investigation?**

A. That's not -- that's -- not all the time.

**Q. Okay. So for instance, if you were to find something that would be disqualifying in something you were reviewing in the first of, say, five jobs this person had, you would stop your investigation there and you wouldn't go forward and look at everything else, right?**

A. Yes.

**Q. Okay. All right. What kind of things are you looking for that would be disqualifying for an applicant for a job with RPD?**

A. We typically use the NRS to kind of guide us, but we all have our own guidelines. Sometimes they're -- they're -- most of them are -- we can be more restrictive, but we can't be less restrictive. So depending on the -- the situation, it -- it could be employment, it could be references, it could be drug history, it could be crimes. It could be any of those things.

**Q. Okay. Are -- do any of those factors weigh heavily than any others?**

A. No, not to me.

**Q. All right. So when you do a background investigation, are you essentially looking for**

**information, if a person is otherwise qualified, that would disqualify them for employment at RPD?**

A. Could you repeat that again, please?

**Q. Yeah. I'm just asking if the point of the investigation is the search for information that would be disqualifying?**

A. The -- yeah, the point of the information is just to discover as much as we can about this candidate that we're going to be putting in our organization --

**Q. Okay.**

A. -- you know?

**Q. Sure. And, you know, police work is important. It's a very important job, obviously. So you got to make sure that the candidates you're hiring are people you can trust, right, to -- to do the job correctly; is that right?**

A. The community would like that, yes.

**Q. Okay. Okay. All right. So can you give me a few examples of things that would be, you know, immediately disqualifying if you were to discover it in someone's background?**

A. Felony, drugs, domestic battery, you -- you -- things of that nature.

**Q. Okay.**

A. Employment, like --

**Q. So negative references from a former employer?**
A. What was your question? I didn't hear you. Sorry.
**Q. So for example, negative references from a former employer, that might be disqualifying?**
A. That could be, but ultimately I don't make those decisions. I just present the facts. The hiring authority makes the decision on if they're going to move forward with person or not.
**Q. Okay. Who's the hiring authority at RPD?**
A. Today or back then?
**Q. Back then.**
A. That was Deputy Chief Robinson at that time.
**Q. Okay. So you make a recommendation, you provide that to Deputy Chief Robinson, and he makes the determination; is that right?**
A. That is correct.
**Q. Okay. How often does Deputy Chief Robinson reject a recommendation that you make for a candidate?**
A. I don't know.
**Q. Okay.**
A. Like --
**Q. Do you have -- do you recall any case where you said, hey, we shouldn't hire this person, but he**

**hired them anyway?**
A. Yeah, sometimes. I mean, those discussions happen, but, ultimately, it's his decision. It's not my decision. I can't -- I -- I don't have authority to go over him.
**Q. Okay. Would a ten-year-old DUI be disqualifying for a police candidate?**
A. No, not for us.
**Q. Okay. All right. Would you take into consideration, for a DUI, you know, the age at which the person was when they received it and other extraneous factors?**
MS. PARKS: Objection. Vague.
MR. DUNAGAN: You can answer.
THE WITNESS: Okay. So that -- the -- ultimately, we -- we present everything and then the hiring authority makes a decision on if they're going to want to hire that person or move forward in that -- with that person or not.
BY MR. BUSBY:
**Q. Okay. But you're the person charged with making recommendations to the hiring authority, right?**
A. I'm the person that presents the facts to the hiring authority.
**Q. Okay. All right. So -- so you don't make a**

**recommendation as to whether or not this person should disqualify to be hired by RPD?**

A. I make the recommendation in terms of like I put what it -- would what it would be in terms of, like if it's disqualifying or not disqualifying.

**Q. Okay.**

A. And then they say -- they sign on and say, yes, that's what it's supposed to be or not supposed to be.

**Q. Okay. So just to be clear, would a ten-year-old DUI for a candidate be disqualifying for RPD?**

MS. PARKS: Objection. Asked and answered.

MR. DUNAGAN: You can answer

THE WITNESS: Right now, no.

BY MR. BUSBY:

**Q. Okay. What about during the time period, say, 2018?**

A. I don't think so.

**Q. Okay.**

A. But, ultimately, Tom makes that decision.

MR. BUSBY: All right. I'd like you to take a look at what I've marked as Exhibit 1.

(Exhibit 1 was marked for identification.)

THE WITNESS: Yeah.

BY MR. BUSBY:
**Q. All right. Can you take a look at that and read it real quick? And then I want to ask you some questions about it.**
A. "Dear, Mr. Erwine. I regret to inform you that your application for employment" --
MR. DUNAGAN: You don't -- you don't need to read it out loud, Jerry. Just take a look at it --
BY MR. BUSBY:
**Q. Oh, yeah. I'm sorry. Sorry. That wasn't clear.**
A. Okay.
**Q. Okay. Is that your signature at the bottom there? Detective, is that your signature at the bottom?**
A. Yes.
**Q. Oh, okay. Great. Sorry. I didn't hear you. Do you recall this candidate?**
A. No, not in particular.
**Q. Okay. Before your deposition today, did you look into any records related to Mr. Erwine at RPD?**
A. Yes.
**Q. Okay. What did you look at?**
A. Documentation that -- that I wrote up.
**Q. Okay. Do you recall the name of that document?**

A. It's a short form.
MR. BUSBY: Okay. Can you take a look at Exhibit 2?
(Exhibit 2 was marked for identification.)
THE WITNESS: Is this like a different --
MR. DUNAGAN: Is that the subpoena, Luke?
MR. BUSBY: Yeah. It's the last two pages of it.
MR. DUNAGAN: For clarification, is it the -- is -- it says "Confidential" on the top and it's dated --
MR. BUSBY: Yes.
MR. DUNAGAN: -- February 13th, 2018?
MR. BUSBY: Correct.
MR. DUNAGAN: Okay.
BY MR. BUSBY:
**Q. Detective Bowden, is this the document -- Bowden -- I'm -- Bowden, I'm sorry. Is this the document you reviewed before your deposition?**
A. Yes.
**Q. Okay. Great. Did you look at any other documents in Mr. Erwine's file?**
A. No.
**Q. Okay. Did you see any other documents in his file?**

A. No.
**Q. All right. So how was the file kept at RPD? Is it electronic or is there a paper copy or something else?**
A. It was -- during this time, it -- this would've been hard copy, but then they were transitioning these things to the computer. So all the -- the initial hard copies are all that property retention -- has already been destroyed. That they're gone.
**Q. Oh, okay.**
A. So I don't know -- I don't know where that file is at.
**Q. But you -- you believe it's been destroyed?**
A. I -- it is a retention. So like, you can't keep it. You only get to like keep it for so long.
**Q. Do you know how long it was kept?**
A. No.
**Q. Do you know under what authority it was destroyed if it were -- if it was?**
A. I'm not sure.
**Q. Okay. All right. That's not your department, records retention?**
A. No. So like, the gal who's responsible for that, she's not -- no longer here, so I'm not sure how

that happened. Like --

**Q. Okay. Do you have any independent recollection, other than from the documents reviewed, of Mr. Erwine's case?**

A. No.

**Q. Okay. You see a lot of these, right? So you're probably not going to remember every one, especially one from, you know, eight years ago, that fair?**

A. Is that fair to say? Yes.

**Q. Okay. All right. Do you know the main reason why Mr. Erwine was not hired at RPD based on your review of the records?**

A. Yeah. He just -- work history.

**Q. Okay. All right. Let's take a look at Exhibit 2 again, those last two pages.**

A. Okay.

**Q. I'd ask you to -- to read this over and then I want to ask you some questions about it. Are you ready?**

A. Yes, sir.

**Q. Okay. Great. So is it fair to say the introductory paragraphs just say perfunctory language saying you conducted this investigation?**

A. You're talking about the first paragraphs?

The first --
**Q. Yeah.**
A. Yes.
**Q. First two.**
A. Yes.
**Q. Okay. So let's turn to the second or the part where it says, "Experience and employment." So it states that you spoke to the sheriff of Churchill County and he gave him an unfavorable -- a very unfavorable recommendation, right?**
A. Yes.
**Q. Do you recall that conversation?**
A. No.
**Q. Okay. Do you know who the sheriff at Churchill County was at that time?**
A. No, I do not.
**Q. Okay. Do you see the second sentence where it states, according to the sheriff, Erwine, who was a deputy in the jail, spent a ton of time in investigating his peers? Do you recall --**
A. Yes.
**Q. Do you recall discussing that with the sheriff?**
A. That particular part right there because, like, you just read it to me, yes.

**Q. Okay. All right. So when hearing that from a former employer, what impression does that create in your mind as a background investigator?**

A. For me, nothing. That's going to be for administration to make a decision on that. You know, I just present the facts on what's happening or what I discovered.

**Q. Okay. Did you question Sheriff Trotter about the facts and circumstances surrounding what happened?**

A. Who was -- is that the sheriff at the time?

**Q. Yeah.**

A. -- trotter. Yes. I -- he explained what -- what was going on.

**Q. Okay. Did you ask for any records to corroborate what the sheriff was telling you about Mr. Erwine?**

A. No.

**Q. Okay. So just to be clear, your investigation in this case, to the best that you recall, didn't proceed beyond this phone call?**

A. True.

**Q. Okay. All right. So how would you characterize the sheriff's description of Mr. Erwine as an employee?**

MS. PARKS: Objection. Vague and ambiguous.
MR. DUNAGAN: You can answer.
THE WITNESS: She (sic) just gave him an unfavorable recommendation, but he wasn't -- he was professional when he was talking about it. It was -- that was it.
BY MR. BUSBY:
**Q. Okay. Do you recall whether he called Mr. Erwine any names?**
A. No.
**Q. Okay. Did he call -- do you recall whether he called Mr. Erwine a piece of shit?**
A. No.
**Q. Okay. Would you have written that down if that was communicated to you?**
A. Yes.
**Q. Okay. Where would you have written it down?**
A. Here.
**Q. Okay. Not -- in your notes?**
A. In the document right here.
**Q. Okay. But your notes were separate from this document, right?**
A. That would be over the phone, so I'm writing them over the phone.
**Q. Okay. Did you take notes from your**

**conversation with Sheriff Trotter?**
A. I don't recall. I assume, though, but I don't recall.
**Q. So do you recall -- all right. Let's take a look at the next page. So there's a -- a bunch of other stuff listed there, like a DUI, right, on --**
A. Yes.
**Q. -- June 15th, 2011? Looks like some other stuff. Trespassing, it's a juvenile -- what's CDM. Do you know what that is? Under the charge, under the second row under legal.**
A. I'm not seeing it. Contributed to the delinquency of a minor.
**Q. Okay. And then on the -- the next page, there's a bunch of motor vehicle operation violations. Do you see those?**
A. Yes.
**Q. Okay. All right. And do you see under the bold statement at the bottom there, "The following Reno Police Department automatic rejection criteria and/or administrative guidelines apply"? Did you write that?**
A. Yes.
**Q. Okay. Do you see where it says, "16, work history"?**
A. I wrote the work history part, yes.

**Q. Oh, okay. So --**

A. The -- following the guidelines is -- it's just -- that's always there.

**Q. Okay. So did this -- so under work history, it states unfavorable recommendation from previous employer, right?**

A. Yes.

**Q. Okay. So that was what disqualified him from being employed at RPD, right?**

MS. PARKS: Objection. Asked and answered.

BY MR. BUSBY:

**Q. I'm sorry. Go ahead.**

A. Yes.

**Q. Okay. And it states there at the bottom, "Lieutenant Donohoe has reviewed and approved this background investigation," right, correct? Detective; is that correct?**

A. Yes.

**Q. Okay. I'm sorry. I might be missing some of your answers here on Zoom. All right. So just returning to the background investigation process, generally, what role does, you know, prior education and experience play in an evaluation?**

A. Of a candidate?

**Q. Yeah.**

A. It's part of the -- just -- we look at it, yes.

**Q. Okay. Do you recall -- oh, yeah. I'd like you to take a look at -- at Exhibit 2 again. The first page of your -- in background investigation unit report, you see there where it states under experience and employment, "It should be noted that several law enforce agencies in Las Vegas permanently disqualified him from their process"?**

A. Yes.

**Q. Okay. So is the fact that an recruit has been rejected by other agencies, does that weigh in as a factor as to whether they're a good candidate at RPD?**

A. Case by case the -- so when I'm doing a background investigation, I have to list all this stuff, right, so the -- the hire authority can make a decision.

**Q. Okay. Do you recall how you obtained that information about several law enforcement agencies in Las Vegas disqualifying him from their process?**

A. I don't recall them but I'm sure I contacted them via phone, right?

**Q. Okay. All right. But I think you testified earlier that your investigation basically concluded after you spoke with Sheriff Trotter; is that right?**

A. Concluded in terms of?

**Q. Concluded after you spoke with Sheriff Trotter.**

A. No. I mean, this is all part of it. So one part is speaking to Sheriff Trotter and the other part is speaking to the other agencies that are in Las Vegas, right, but it's all the same.

**Q. Do you remember which one came first?**

A. I do not recall that.

**Q. Do you recall who you spoke to in Las Vegas about Mr. Erwine?**

A. Nope.

**Q. I'm sorry?**

A. No.

**Q. Oh, okay. Would your notes have reflected who you spoke to and what they said?**

A. I don't recall. No, I'm not sure.

**Q. All right. Do you recall receiving any background investigation files from any of law enforcement agencies about Erwine?**

A. No, did not receive anything.

**Q. Okay. If someone is rejected from numerous law enforcement agencies, what bearing does that have on your decision to recommend whether or not they be hired at RPD?**

A. That's all case by case. So I've seen people where they get rejected by other agencies and they get hired. So I mean, it's hard for me to speculate or specify on that.

**Q. What about -- what about candidates that are permanently disqualified from other law enforcement agencies' hiring process?**

A. We don't permanently disqualify anybody, so -- we just -- I have to write it down.

**Q. Okay. Why did you say it should be noted here that several law enforcement agencies in Las Vegas permanently disqualified him from their process?**

A. Because that's what they told me.

**Q. Okay. Why -- why did you say it should be noted that has nothing to do with your decision whether or not to hire him?**

A. That's all part of the background, sir. So when I'm doing the background investigation, I contact all these agencies. They did -- they tell me that this -- this candidate is currently disqualified from them, that I have to include that into this report so the hiring authority has all the information.

**Q. Okay. But why is that information relevant to the question of whether or not to hire them?**

A. Why is that -- could you repeat that?

**Q. Sure. Why or why not is that question relevant as to your determination whether or not they should be hired?**

A. It's not my decision. It -- it's --

**Q. I'm not asking if it's your decision. I'm asking you why it's relevant and why it's in your report.**

A. It's relevant because it's part of the background investigation, the contact. All former agencies that he's applied to or anyone has applied to, that's part of the process.

**Q. I understand that's part of the process. That's not what I'm asking. I'm asking you what weight you give it in making a determination about whether to hire somebody or not?**

A. I don't give it a weight, sir. I just submit the facts and the hiring authority makes a decision.

**Q. Okay.**

A. It's not weighted and not weighted. It's -- no weights on it.

**Q. But you determine whether or not someone is subject to automatic rejection criteria and/or administrative guidelines. Doesn't that determine sort of -- some sort of judgment on your part?**

A. That's me listing the work history of why we're disqualifying a person. Is that what you're asking me?

**Q. No, I'm asking you how you make a subjective determination as to whether someone who's applying for a job at RPD is subject to automatic rejection criteria and/or administrative guidelines that might apply?**

A. Based on the -- the background investigation information I receive, then I put that down there. And then ultimately, the hiring authority makes a decision if that's going to fall through or not.

**Q. Okay. So you look at the facts you're provided, you look at the list of criteria that RPD uses to determine whether a candidate is eligible, you plug the facts into that criteria and you generate an outcome, which is then evaluated by Lieutenant Donohoe in this instance, right?**

A. Yes.

**Q. Okay. So is it fair to say everything that's in this report is relevant to your determination or was your determination specifically based on his unfavorable recommendation from his previous employer?**

MS. PARKS: Objection. Vague and ambiguous.

MR. DUNAGAN: You can answer if you understand the question.

THE WITNESS: Could you repeat that?
BY MR. BUSBY:
**Q. Sure. So all of the information that's in here is information required to provide as part of your background investigation memorandum, right?**
A. Yes.
**Q. Okay. But, ultimately, the determination that you made or the recommendation that you made, the disqualifying recommendation, is number 16, work history as you listed in your report, right?**
A. Yes.
MR. BUSBY: Okay. I'd like you to take a look at Exhibit 3, if you could.
(Exhibit 3 was marked for identification.)
BY MR. BUSBY:
**Q. I don't know if you've seen it before, but I'd just ask -- like you to review it for a minute before asking you some questions about it.**
MR. DUNAGAN: Go ahead and read it.
MS. PARKS: Can we take a few-minute break while the witness has an opportunity to review this, Luke?
MR. BUSBY: Oh, sure. Of course.
MS. PARKS: I want to grab some more coffee.
MR. BUSBY: Take five minutes, okay?

DEPOSITION OFFICER: All right. We are going off the record and the time is 9:41 a.m.

(A recess was taken.)

DEPOSITION OFFICER: We are back on the record in the matter of Michael Erwine v. United States of America, et al. And the time is 9:46 a.m.

BY MR. BUSBY:

**Q. All right. Detective, did you have a chance to take a look at Exhibit 3 during the break?**

A. Yes.

**Q. Okay. Have you ever seen this before?**

A. No.

**Q. Okay. If you recall, earlier you indicated that you had a phone call with Sheriff Trotter or the sheriff of Churchill County. Does the document you just read generally reflect the contents of the conversation you had with him?**

MS. PARKS: Objection. Vague. Ambiguous. Overbroad.

THE WITNESS: Only thing I recall in this whole thing is what I documented in the short form, that conversation.

BY MR. BUSBY:

**Q. Okay. So based on your experience with background investigations, do you think a memorandum**

**like this in someone's file would effectively exclude them from being able to be hired as a law enforcement officer by RPD?**

MS. PARKS: Objection. Overbroad. Improper hypothetical.

THE WITNESS: I don't know. This is not my document and I can't speak to Churchill County's and their -- what they have going on.

BY MR. BUSBY:

**Q. Okay. But do you -- I mean, would you agree that this isn't exactly a positive characterization of Mr. Erwine's employment with Churchill County?**

MS. PARKS: Same objections.

THE WITNESS: You -- you repeat your question again, sir?

BY MR. BUSBY:

**Q. I'm asking you whether you think this is -- this is a document that would lead one to think positively about Mr. Erwine as a police candidate?**

MS. PARKS: Same objections.

THE WITNESS: No.

BY MR. BUSBY:

**Q. Okay. All right. So any police background investigator who would see something in this, in a file, they wouldn't seriously consider hiring someone**

**like that to work at their agency, would they?**
MS. PARKS: Objection. Overbroad. Lack of foundation. Calls for speculation on the part of this witness. Improper hypothetical.
BY MR. BUSBY:
**Q. Go ahead.**
MR. DUNAGAN: Yeah. I mean, you -- you can answer.
THE WITNESS: Just, again, I can only speak to my agency.
MR. DUNAGAN: Can I ask a clarifying question or -- or -- for what you're asking for, Luke? Sorry. Are you asking if he had seen this?
MR. BUSBY: Yeah.
MR. DUNAGAN: Okay. Just -- just for clarification.
THE WITNESS: If I had seen this, I would -- I would document and submit it up, but I didn't see this, so I don't know.
BY MR. BUSBY:
**Q. But that would fall under the work history exclusion that we discussed in Exhibit 2. This would definitely be an unfavorable recommendation from a previous employer; is that right?**
MS. PARKS: Objection. Relevance. Lack of

foundation. Calls for speculation.
MR. DUNAGAN: Go ahead.
THE WITNESS: Yes. Yes.
BY MR. BUSBY:
**Q. Okay. I mean, obviously, right? I mean, this isn't something that -- there -- these are some serious accusations that are being made against Mr. Erwine in his capacity as a police officer, right? Detective, am I correct?**
A. Yes. Yes.
**Q. Okay. So this isn't exactly a guy you would hire -- want to hire to work with your -- your agency, right?**
MS. PARKS: Objection. Asked and answered.
THE WITNESS: Again, sir, I don't -- I would -- I would write this up. I don't make the decision on who we hire and who we don't hire.
BY MR. BUSBY:
**Q. Okay. All right. Do you see where it states there on Page 2 of Exhibit 3, "Conduct on becoming a deputy and an unjustifiable use of force"? I'm sorry, I can't hear your responses half the time. I'm not --**
A. I said okay.
You -- what do you -- I -- I'm looking

at it.
**Q. Okay. So is that the kind -- is -- is that the kind of statement that would disqualify someone under the work history exclusion, unfavorable recommendation from previous employer -- employer under RPDs criteria for hiring a police candidate?**
MS. PARKS: Objection. Vague. Ambiguous. Improper hypothetical. Lack of foundation.
MR. DUNAGAN: Go ahead.
THE WITNESS: Maybe. I mean, I -- I assume. It's all -- all -- all employment. It's all his employment, so.
BY MR. BUSBY:
**Q. So yes?**
A. Sure.
MS. PARKS: Objection. Misstates his testimony.
BY MR. BUSBY:
**Q. All right. Just as -- in your police work in general, are you familiar with what's, you know, the due process protections that are built in for police officers before something like Exhibit 3 is placed in their file?**
MS. PARKS: Objection. Improper hypothetical to this fact witness. Calls for a legal

conclusion. This is also beyond the scope of the subpoena.
BY MR. BUSBY:
**Q. Go ahead, Detective.**
MR. DUNAGAN: Go ahead.
THE WITNESS: I don't understand your question.
BY MR. BUSBY:
**Q. So when a police officer is accused of misconduct at RPD, for example, are they typically entitled to some sort of process where they can address the allegations against them, present evidence refuting it, and have someone evaluate whether their side of the story might be correct or not?**
MS. PARKS: Objection. Lack of foundation. Improper hypothetical to this witness.
MR. DUNAGAN: Go ahead.
THE WITNESS: Yes.
BY MR. BUSBY:
**Q. Okay. And when doing a background investigation and looking through a file, do you sometimes see cases where officers at former places of employment have been inaccurately or wrongfully accused of misconduct when they didn't do anything wrong?**
A. You're asking me if I've seen these in any

-- these type of cases of any other files?
**Q. Yeah.**
A. Is that your question?
**Q. Yeah.**
A. I've seen -- yeah, I've seen things in other files before. Yes.
**Q. Okay. But when you're doing a background investigation, you're trying to look at the entire set of circumstances surrounding someone's employment at an agency, right?**
A. Yes.
**Q. Okay. So let's say they're accused of misconduct at a certain point, but then exonerated, a hearing is held, a determination is made, hey, this person was accused of this thing, but they didn't actually do it, or it wasn't actually a violation of our policies.**
**So would that bear on your decision about whether to disqualify them under the criteria you have at RPD for evaluating candidates?**
A. In that situation, sir, we would still document that --
**Q. Okay.**
A. -- if that was a -- the hypothetical case you're saying in this. I don't -- I don't know, but,

yeah, we take everybody's information we use the coworkers, the supervisors. Like, we will ask everybody --

**Q. Okay.**

A. -- in reference to that.

**Q. You're trying to give the person a fair shot, right, at getting a job if they're qualified; is that right?**

A. Yes.

**Q. Okay. So do you have any idea of whether the accusations that Sheriff Trotter leveled against Mr. Erwine in your phone call with him, whether those were borne out by any kind of subsequent investigation or anything like that?**

MS. PARKS: Objection. Misstates his testimony with respect to what Sheriff Trotter told him during that conversation. Lack of foundation.

BY MR. BUSBY:

**Q. I'm glad to rephrase it. Can you turn to Exhibit 2 again? The first page of your -- of your memorandum.**

A. Yes.

**Q. Okay. So do you see the second sentence under experience and employment where it states, "According to the sheriff, Erwine, who was the deputy**

**at the jail, spent a ton of time investigating his peers. Erwine convinced an inmate that he was being abused when the deputies didn't bring him water at every request."**
**Did -- did you see any evidence in his file or did you hear anything from Sheriff Trotter about whether Mr. Erwine was able to ever give his account of what happened, tell his side of the story, anything like that?**
A. You asked two questions there. So the first one --
**Q. Okay.**
A. -- over the phone call --
**Q. Yeah.**
A. -- I don't really recall the specifics. And then the second thing you asked me, did I go see the file, I did not go see the file.
**Q. Okay.**
A. It was a phone conversation.
**Q. I guess what I'm trying to get to is whether or not there was any indication in anything you reviewed, that you recall, that Erwine was given any kind of opportunity to rebut the things he was accused of doing by Sheriff Trotter that were conveyed to you during your call with Sheriff Trotter?**

A. Sir, again, I didn't review anything because you said review again, but the phone call, I only remember what I wrote here, is what happened. It's so long ago. That's all I recall.

**Q. Okay. All right.**

A. Alright.

MR. BUSBY: Sorry to -- sorry to be pushy, but I got to ask. And I appreciate your time, Detective.

I'll pass the witness.

EXAMINATION

BY MS. PARKS:

**Q. Hi, Detective. I'm going to be brief --**

A. Okay.

**Q. -- but just a couple of questions. As you know, at the beginning, I represent Ben Trotter and Churchill County in this case.**

A. Okay.

**Q. If I can have -- if I can just have you take a quick look at Exhibit Number 1 for me? And the last paragraph or the last sentence in Exhibit Number 1, your letter of March 1st, 2018, it indicates, "This rejection does not preclude you from applying again for this position."**

**That -- I've read that accurately,**

**correct?**
A. Yes, ma'am.
**Q. And as you indicated, Reno PD does not permanently disqualify persons in terms of those who want to seek employment as a police officer with you?**
A. That is correct.
**Q. Do you know if Michael Erwine applied -- reapplied for a position with RPD after the application that we're talking about here?**
A. I don't recall --
**Q. Okay.**
A. -- if he reapplied.
**Q. Okay. I'm going to share my screen real quick with you. I'm not very good at this, so bear with me. I may have to have my trustee assistant help me, but I'm going to give this a try and share my screen with you. Do you see what's up on my screen, Detective, by chance?**
A. I do not.
**Q. Okay. Of course not.**
MR. BUSBY: Kathy, if you want to email me the exhibit, I'm glad to display it on the screen. If that's --
MS. PARKS: If you could just hold on one moment, please.

MR. BUSBY: Okay.
MS. PARKS: That's the one I want to share that's up there right now. Okay. It's okay, they can't see you --
UNIDENTIFIED SPEAKER: Okay.
MS. PARKS: -- just sit in chair. Because Luke had some exhibits that I was looking at. So we may -- if I have to get out of whatever I was in there.
UNIDENTIFIED SPEAKER: Okay. There. They should be able to see it.
MS. PARKS: Okay. And then I'm just using the top.
UNIDENTIFIED SPEAKER: Yeah.
MR. DUNAGAN: We can see it now.
MS. PARKS: Okay. Thank you. Help -- help is on the way.
I'll eventually mark this Exhibit Number 4 to the deposition.
(Exhibit 4 was marked for identification.)
BY MS. PARKS:
**Q. Detective. This is an email that's been produced in this case --**
A. Uh-huh.
**Q. -- an email indicating that Mr. Erwine had applied for a lateral police officer position, at some**

**point in this email, is dated October 19th of 2023. So I'm just wondering, you don't recall reviewing Mr. Erwine's qualifications or -- or his -- an application after the one from back in 2018?**

A. No. Like, this is -- that's from civil service. So --

**Q. Oh, okay.**

A. -- that goes to civil service first. This is the first time I've seen this document.

**Q. Okay. When -- when a candidate applies for a position as a police officer with Reno PD now, Detective, do they -- is the application pretty much done online?**

A. Yes. Now.

**Q. Okay. As part of the application process, does -- does a candidate for a position with RPD, do they have to -- or are they required to list the names of agencies to which they applied but were not hired?**

A. They don't list it at the application date. They list it in the background process of the prescreening date, is when they list that.

**Q. Oh, okay. So an application is done online and then during the prescreening process, a candidate fills out something more detailed?**

A. So like, the first thing they do is, they

apply online, then that's getting reviewed by HR, and then it gets reviewed by civil service. And then once they -- that process is complete, then they make it to a list, and then we get the list, at that time, of who those candidates are. And then from there, then we go and start doing our thing in terms of prescreening people. And that's when we -- that's when we learned about agencies, if they list it.

**Q. Oh, okay. Now, back in March of 2018, was the process pretty much the same as what you just described, other than there's a different chain of command now?**

A. Yeah, it's -- that's what I recall.

**Q. Okay. Back in the period of March of 2018, did you have what you described earlier as a rolling hiring process back then or did you sort of review candidates in -- in batches?**

A. No. Back then, I don't think, there was a continuous hiring.

**Q. Okay. So you'd have people apply and then have a period where you would then decide and -- and hire somebody?**

A. They were doing it like once a year. So like, I think back there, doing, like, testing and application stuff all once a year.

**Q. Okay. Any idea, back in March of 2018, how many candidates you would've reviewed during that year's hiring process?**

A. I don't know. I don't recall.

**Q. Okay. Would -- would -- can you recall if it was a lot, like maybe more than 50, maybe more than 100? I'm just wondering of the interest back then, if you can recall?**

A. It -- it -- it was definitely more than it is now. So I mean, I don't recall the specific number. It was -- it's probably definitely over 50.

MS. PARKS: Okay. Great. So I'm going to show you something that we'll mark as Exhibit Number 5 to your deposition.

(Exhibit 5 was marked for identification.)

BY MS. PARKS:

**Q. And I'll submit to you, Detective, this is a copy of a lateral police officer job description that I obtained from the City of Reno's website. And if you just look at that, are you familiar with that job description?**

MR. DUNAGAN: Kathy, could you zoom in on that a little bit?

MS. PARKS: Oh, I sure can. I think.

MR. DUNAGAN: Thanks.

THE WITNESS: I'm not, like, really familiar with the -- with that -- that particular announcement, but I know it, like, a little bit.

BY MS. PARKS:

**Q. Okay. Okay. Well, I just want to go down a little bit.**

DEPOSITION OFFICER: Sorry to cut in, but, Detective Bowden, can you, like, move the camera down a little bit because, like --

THE WITNESS: Oh.

DEPOSITION OFFICER: -- half your face is cut off.

MR. DUNAGAN: Sorry. We can't see ourselves. All we see is the document.

DEPOSITION OFFICER: Yeah.

MS. PARKS: Oh, sorry.

DEPOSITION OFFICER: Maybe a little bit more. The bottom of his face is still cut off. Perfect. Thank you.

BY MS. PARKS:

**Q. Now, Detective, I just want to ask you about the portion here of this job description that states, "Candidates will not be considered who resigned in lieu of termination or been terminated from any civil service employment for substantial misconduct involving**

**dishonesty and has not been reinstated as a result of a judicial action or any available appeal or remedy relating to the resignation or termination."**
**Do you see that there?**
A. Yes, ma'am.
**Q. Okay. So this suggests that if a person resigns in lieu of termination or is terminated for dishonest conduct, then they are automatically -- they will not be considered for employment, correct?**
A. [Nods head yes] yes, that is correct.
**Q. I'm sorry, what was that?**
A. Yes.
**Q. Okay. But if they've been reinstated, then -- then that is not an automatic disqualification, correct?**
A. You're saying if they've been reinstated --
**Q. If they were reinstated to their position.**
A. That is -- yeah, that's correct.
**Q. Okay. So for example, if you learned that Mr. Erwine had been re-offered employment with the Churchill County Sheriff's Office, would that have been something that was relevant to your background investigation?**
MR. BUSBY: Objection. Object to the form. Relates to settlement negotiations.

Go ahead.
          THE WITNESS:  Yes.
BY MS. PARKS:
     **Q.   Okay.  Looking back at Exhibit Number 2 to your deposition, your memorandum of February 18 -- or excuse me, February 13th of 2018.  And I just want to be clear here, under experience and employment where you discuss the telephone call --**
          MR. BUSBY:  Kathy, we can see your email right now.
          MS. PARKS:  Oh, ha-ha.  Well, that's not something you want to see either.  And that's not something that you want to be seeing either.  All right.  I'm trying to -- I know what I need to do. Stop sharing, right?
          MR. BUSBY:  Yeah.
          MS. PARKS:  I'm just absolutely the worst. Sorry about that.
BY MS. PARKS:
     **Q.   Looking at Exhibit Number 2, first off, Detective, do you recall how long your conversation with the sheriff of Churchill County was?**
     A.   I don't recall how long that was.
     **Q.   Okay.  Had you ever spoken to the sheriff of Churchill County prior to the discussion we've talked**

**about today? Had you ever talked to him before?**
A. No.
**Q. Okay. And you -- just to be clear, you testified you never went to Churchill County to look at any sort of employment file related to Mr. Erwine, correct?**
A. That is correct.
**Q. Okay. And you were never provided a copy of the memorandum that Mr. Busby asked you about, and that is attached as Exhibit Number 3, correct?**
A. That is correct.
**Q. And in terms of the information that was provided to you by the sheriff of Churchill County, from what you recall, you documented the information he gave you under experience and employment under Exhibit 2, correct?**
A. Yes.
**Q. And if the sheriff had -- for example, Mr. Busby asked you if the sheriff had called Mr. Erwine a piece of shit, you would've -- you would've documented that in Exhibit 2?**
A. Yes.
**Q. And if Sheriff Trotter or the sheriff of Churchill County had told you that the candidate was dishonest or had been terminated for dishonesty, is**

**that something you would've placed in Exhibit 2?**
A. Yeah. I just don't recall that conversation with him verbatim.
**Q. Is that the kind of thing that you would've documented?**
A. Yes.
**Q. Have you ever met the sheriff of Churchill County, Sheriff Trotter, in person?**
A. No.
**Q. Is the fact that a candidate received a -- a DUI -- is that something, Detective, that is, to your knowledge, considered by the hiring authority as part of its decisions with respect to new candidates?**
MR. BUSBY: Object to the form. Asked and answered.
Go ahead.
THE WITNESS: Yes. They'll look at everything.
BY MS. PARKS:
**Q. If a candidate is terminated by a law enforcement agency -- well, nevermind. That's something that probably Mr. Busby already asked you. I don't want to prolong it. Do you know someone named Zach Westbrook who works for the Washoe Tribe?**
A. No.

**Q. Okay. Do you recall ever speaking with the candidate in this case, Michael Erwine?**

A. No, I don't recall that.

**Q. At what point in time would you interview the candidate?**

A. If -- if they determined -- like, if the hiring authority told me to -- to continue this process, then that would probably be next.

**Q. Okay. Would you be the person to interview potential candidates or is it kind of a -- is there a hiring board or something?**

A. The initial interview is done by the hiring board and then -- then they move to meet, right? That's the next step.

**Q. Okay. All right. Do you remember anything about --**

A. But not all the time. So like, that prescreen in advance, so, like, that's how that works, too, so.

**Q. Okay. And just to -- to be clear, since I don't know that we have it, looking at Exhibit 2 again, under -- right above experience and employment, this says, "Mr. Erwine applied for a position with the City of -- of Reno in July of 2017." And you began your initial background check on February 13th of 2018,**

**correct?**
A. Yes.
**Q. It -- was that typical of sort of the amount of time it would take between the time a person applied and when you would start your background check?**
A. Just like where they --
**Q. I'm sorry.**
A. -- where -- where they tested at, like, how -- where they landed at. Like --
**Q. Oh, oh.**
A. -- I -- I don't have any control over the list --
**Q. Okay.**
A. -- what's sent to us. It's just, that's -- that's the safety net in it.
**Q. Okay. All right. Do you recall speaking any -- to anyone else associated with Churchill County or the Churchill County Sheriff's Office concerning Mr. Erwine?**
A. No.
MS. PARKS: Okay. Thank you. That's all the questions I have.
DEPOSITION OFFICER: Luke, did you have any follow up?
MR. BUSBY: No, nothing else.

Mark, do you have -- do you have any questions?

MR. DUNAGAN: I would like to just get some things on about the document retention, if -- if I could?

MR. BUSBY: Okay.

MR. DUNAGAN: Know that's an area of interest.

EXAMINATION

BY MR. DUNAGAN:

**Q. Detective Bowden, what's your understanding of the -- the practice of document retention with background investigation documents at RPD?**

A. So what happens is, like, whoever we -- is not hired at the Reno Police Department, at three years, that document has to be shredded and out of our department.

**Q. Okay. So it's normal then for there not to be documents from a candidate who was not hired in the 2018 time frame at this point?**

A. That is normal. Only if you've worked at the Police Department, the documents still would be there.

**Q. Okay. And do you know why you still have the short form for Erwine that you were able to review**

**before this deposition?**

A. Yes, because when I wrote the short form up, it went into the online system and Eloisa (phonetic) didn't have time -- she was working her way getting to that document to just -- to shred it.

**Q. And when you say "Eloisa," are you're referring to the internal affairs secretary who recently retired?**

A. Yes.

MR. DUNAGAN: Okay. I don't have anything else.

MS. PARKS: I've --

MR. BUSBY: Kathy?

MS. PARKS: Sorry, Luke, if you have a few. I have -- I have another question that I -- I want to ask him or another --

MR. BUSBY: Okay. Go ahead.

MS. PARKS: Okay. But I have to figure out once again how to do this. I need to show the witness another document, and of course I don't know -- do it.

DEPOSITION OFFICER: If you -- if you click share screen --

MS. PARKS: Yeah.

DEPOSITION OFFICER: -- the little -- yeah. If you click that button and then it's going to bring

up another screen.

MS. PARKS: Yeah.

DEPOSITION OFFICER: If you have the document pulled up on your computer already, just click whatever document it is --

MS. PARKS: Oh, okay.

DEPOSITION OFFICER: -- and then click share.

MS. PARKS: Okay. Let me pull up the document before I do that so that nobody sees my really exciting emails. All right. I think that worked.

EXAMINATION

BY MS. PARKS:

**Q. Detective, I'm -- I'll submit to you that this is a document that has been produced by another defendant in this lawsuit that we're here to talk about today. It's a memorandum relating to Mr. Erwine's employment with the Washoe Tribe. And I just want to go here -- and I'll -- and I'll make it bigger.**

DEPOSITION OFFICER: Do you want to mark this as Exhibit 6?

MS. PARKS: Yes. I'll mark this as Exhibit 6 to the deposition.

(Exhibit 6 was marked for identification.)

DEPOSITION OFFICER: Okay.

BY MS. PARKS:

**Q. Detective, I want to focus your attention here on the last paragraph in Exhibit 6. And this is talking about an investigation of an incident, as you'll see here, February 19th of 2022. And just -- I want to just focus here on this paragraph. And it says, "During your questioning as part of the investigation, you stated to Sergeant Hall that Officer Christensen had informed you that she had issued a Miranda warning to the detained subject prior to your interrogation of the subject. It is clear, by viewing available body camera footage, that this is not true." And then the last sentence said, "This is a direct failure to cooperate with the investigation by answering truthfully, which is deemed insubordination." Is this the type of conduct that would disqualify a candidate from a position with RPD and would be noted in terms of their work history --**

MR. BUSBY: I'm going to object --

MS. PARKS: -- or to learn about that?

MR. BUSBY: I'm sorry. I'm going to object beyond the scope of direct and object to the form and relevance.
Go ahead.

MS. PARKS: Go ahead.

THE WITNESS: Yes. We would -- if this was

a case -- this is the first time I've seen this document, but, yes.

MS. PARKS: Sure. Okay. No further questions.

EXAMINATION

BY MR. BUSBY:

**Q. Okay. Detective, sorry to follow up again.**

MR. BUSBY: Carrie, you're -- or Kathy, you're sharing your screen.

MS. PARKS: Oh, got you. Sorry. I'm --

BY MR. BUSBY:

**Q. Okay. Can you take --**

MS. PARKS: Thanks.

BY MR. BUSBY:

**Q. -- a look at Exhibit 1 or Exhibit 2? I'm sorry.**

MR. DUNAGAN: No. Just the two.

THE WITNESS: Okay.

BY MR. BUSBY:

**Q. All right. So did you -- do you recognize this is as a subpoena we issued to RPD?**

A. Yes.

**Q. Do you see the date of signing there as being March 6th, 2025? The date it was issued by my office.**

A. Yes.

**Q. Okay. And I'd like you to take a look at -- at Exhibit A, which is the next page. So you were shown some documents from Mr. -- by Ms. Parks about Erwine's application to RPD from the 2023 time frame; is that right?**

A. I think that was -- the email, is that what you're referring to?

**Q. Yeah. Yes. Can you -- can you take a look at the kind of documents we requested in the subpoena? Do you see where it states, "Employment applications"? "Applications, processing records, evaluations and assessments, internal memoranda and correspondence, decision records, reference checks and verifications, training or testing materials, complaints or appeals, personnel records or reviews, or any other relevant records."**

A. Yes.

**Q. Based on your description of the retention schedule, you described that some of these documents should have been produced in response to our subpoena regarding Mr. Erwine given that he applied to RPD in the 2023 time frame?**

A. You're talking about the subpoena that -- the -- the -- the email that she produced?

**Q. Yeah.**

A. Yeah, I guess, yes.

**Q. Okay. Okay. All right. And also, if Reno -- RPD destroys all records of employment applications and reviews and everything else within three years, let's say, a -- a prospect applies and -- ten years ago and is disqualified permanently and they apply again ten years later, what record do you -- you use, if any, to determine whether or not they've been permanently disqualified?**

A. I don't -- I don't know about that.

**Q. Okay.**

A. I don't know of any record of that.

**Q. Is there any database that the city maintains on police candidates, such that they know whether or not a previous applicant was permanently disqualified for some reason?**

A. I don't -- there shouldn't be, but I don't know. You know, I don't -- I don't -- I can't speak to, like, that, so I'm not sure.

MR. BUSBY: Okay. All right. No further questions. Thank you.

And if there's not anything else, I'll go ahead and give the closing admonition.

MS. PARKS: Nothing else.

MR. BUSBY: Okay. So Detective, a transcript of your deposition testimony will be produced by E-Depositions. It'll be sent to you in a couple weeks when it's ready, and you'll have a chance to review it and make changes to your testimony if you choose to do so. But if you do do that, I can comment on those changes and use them in future. I can question you about that in later proceedings in this case.
Would you like to receive a copy of your deposition so you can review it and make changes?

THE WITNESS: Yeah, sure.

MR. BUSBY: Okay. Great. Just be sure to provide contact information to E-Depositions. Okay. That's it. Thank you for your time.

DEPOSITION OFFICER: This concludes the recorded -- deposition of Detective Jerry Bowden. Before going off the record, Katherine, did you want a copy?

MS. PARKS: I do. Thank you.

DEPOSITION OFFICER: And, Mark, did you want a copy?

MR. DUNAGAN: No, thank you.

DEPOSITION OFFICER: Okay. Can I get -- can you spell your last name for me, Mark?

MR. DUNAGAN: D-U-N-A-G-A-N.
DEPOSITION OFFICER: And then Detective Bowden, can I get your email?
THE WITNESS: It's my last name, bowdenj@reno.gov.
DEPOSITION OFFICER: @reno?
THE WITNESS: .gov.
DEPOSITION OFFICER: Your last name, j@reno.gov?
THE WITNESS: Yes, ma'am.
DEPOSITION OFFICER: Okay. We are going off the record, and the time is 10:21 a.m.

CERTIFICATE OF RECORDER

DISTRICT OF NEVADA )
)
)

NAME OF CASE: MICHAEL ERWINE, PLAINTIFF VS UNITED STATES OF AMERICA, ET.AL., DEFENDANTS

I, Alicia Staats, a duly commissioned E-Notary Public, authorized to administer oaths or affirmations in the State of Nevada, do hereby certify: That I recorded the foregoing deposition of the witness, Jerry Bowden on 10/30/2025.

That prior to being examined, the witness was duly sworn to testify to the truth. That deposition was recorded via audio and video pursuant to NRCP30(b)(3) and said deposition recording is a complete, true, and accurate recording of deposition testimony. A transcript was created by E-Depositions LLC to aid the audio video recording. A review of the deposition [X] was [ ] was not requested by the deponent and [ ] was [X] was not requested by a party of the action. If a review was requested, any changes communicated to me by the deponent during the period allowed are appended hereto.

I further certify that I am not a relative or employee of an attorney or counsel of any of the parties, nor a relative or employee of an attorney or counsel involved in said action, nor

a person financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand in the City of Reno.

Alicia Staats
Notary Public
Appointment No. 23-8980-02

DISTRICT OF NEVADA )
)SS
)

Case Name: MICHAEL ERWINE, PLAINTIFF VS
UNITED STATES OF AMERICA, ET.AL., DEFENDANTS
Case Number: 3:24-cv-00045-MMD-CSD
Deposition Date: 10/30/2025
Deponent: Jerry Bowden

DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury under the laws of the State of Nevada, that I have reviewed the entire recording of my deposition taken in the above-captioned matter or the same has been played or read to me, and the same is true and accurate, save and except for the changes and/or corrections, if any, as indicated by me on the ERRATA SHEET attached hereto and made part hereof, with the understanding that I offer these changes as if still under oath.

Executed on this_________ day of______________, 2025, at ____________________,

_____________________________
Jerry Bowden

ERRATA SHEET

Case Name: MICHAEL ERWINE, PLAINTIFF VS
UNITED STATES OF AMERICA, ET.AL., DEFENDANTS
Deposition Date: 10/30/2025
Deponent: Jerry Bowden
REASON CODES: 1. To clarify the record.
2. To conform the facts.
3. To correct transcription errors if reviewed with the official audio video recording. Understanding the transcript reviewed is not the official record and is an aide to the audio video recording. Transcription errors will be corrected to match the audio video recording.

Page____________Line_________Reason_____________________________
From______________________________to____________________________
Page____________Line_________Reason_____________________________
From______________________________to____________________________
Page____________Line_________Reason_____________________________
From______________________________to____________________________
Page____________Line_________Reason_____________________________
From______________________________to____________________________
Page____________Line_________Reason_____________________________
From______________________________to____________________________
Page____________Line_________Reason_____________________________
From______________________________to____________________________

Jerry Bowden

Page_____________Line__________Reason________________________________
From_________________________________to______________________________
Page_____________Line__________Reason________________________________
From_________________________________to______________________________
Page_____________Line__________Reason________________________________
From_________________________________to______________________________
Page_____________Line__________Reason________________________________
From_________________________________to______________________________
Page_____________Line__________Reason________________________________
From_________________________________to______________________________
Page_____________Line__________Reason________________________________
From_________________________________to______________________________
Page_____________Line__________Reason________________________________
From_________________________________to______________________________
Page_____________Line__________Reason________________________________
From_________________________________to______________________________
Page_____________Line__________Reason________________________________
From_________________________________to______________________________
Page_____________Line__________Reason________________________________
From_________________________________to______________________________
Page_____________Line__________Reason________________________________
From_________________________________to______________________________
Page_____________Line__________Reason________________________________
From_________________________________to______________________________

Jerry Bowden

**Exhibits**

**Exhibit 1** 3:9 17:23,24 42:20,21 59:15

**Exhibit 2** 3:10 19:3,4 21:16 27:4 35:22 40:20 50:4,20 51:15,16,21 52:1 53:21 59:15

**Exhibit 3** 3:11 32:13,14 33:9 36:20 37:22 51:10

**Exhibit 4** 3:12 44:17,18,19

**Exhibit 5** 3:13 47:13,15

**Exhibit 6** 3:14 57:20,21,22,23 58:2

**1**

**1** 17:23,24 42:20,21 59:15

**100** 47:7

**10:21** 63:12

**120** 4:6

**13th** 19:13 50:6 53:25

**15th** 25:8

**16** 25:23 32:9

**18** 50:5

**19th** 45:1 58:4

**1st** 42:22

**2**

**2** 19:3,4 21:16 27:4 35:22 36:20 40:20 50:4,20 51:16,21 52:1 53:21 59:15

**2001** 7:16,17

**2002** 7:16

**2011** 25:8

**2016** 8:18

**2017** 8:18 53:24

**2018** 17:18 19:13 42:22 45:4 46:9,14 47:1 50:6 53:25 55:20

**2022** 58:4

**2023** 45:1 60:5,23

**2025** 4:7 59:24

**239B.020** 11:2 12:7

**240.1997** 4:11

**25** 7:13

**3**

**3** 32:13,14 33:9 36:20 37:22 51:10

**30th** 4:7

**4**

**4** 44:18,19

**5**

**5** 47:13,15

**50** 47:6,11

**6**

**6** 57:20,22,23 58:2

**6th** 59:24

**7**

**750** 4:5

**8**

**89521** 4:6

**9**

**9:06** 4:7

**9:41** 33:2

**9:46** 33:6

**@**

**@reno** 63:6

**A**

**a.m.** 4:7 33:2,6 63:12

**absolutely** 50:17

**abused** 41:3

**account** 41:8

**accurately** 42:25

**accusations** 36:7 40:11

**accused** 38:9,23 39:12,15 41:23

**action** 49:2

**address** 38:11

**administration** 23:5

**administrative** 25:21 30:24 31:7

**admonition** 61:24

**admonitions** 5:21 6:5

**advance** 53:18

**affairs** 56:7

**affirm** 4:14

**age** 16:10

**agencies** 11:12,14 12:4 27:8,12, 19 28:6,20,23 29:2,11,19 30:10 45:18 46:8

**agencies'** 29:7

**agency** 10:16 12:9,16,24 35:1, 10 36:12 39:10 52:21

**agree** 34:10

**ahead** 26:12 32:19 35:6 36:2 37:9 38:4,5,17 50:1 52:16 56:17 58:23,24 61:24

**aid** 5:1

**Alicia** 4:3

**allegations** 38:12

**Alright** 42:6

**ambiguous** 24:1 31:23 33:18 37:7

**America** 4:3 33:6

**amount** 54:3

**and/or** 25:20 30:23 31:7

**announcement** 48:2

**answering** 58:14

**answers** 7:4 26:20

**apologies** 5:19

**appeal** 49:2

**appeals** 60:15

**applicant** 11:25 12:25 13:12 61:16

**application** 18:6 43:8 45:3,12, 15,19,22 46:25 60:5

**applications** 60:11,12 61:4

**applied** 30:10 43:7 44:25 45:18 53:23 54:4 60:22

**applies** 9:11 45:10 61:6

**apply** 25:21 31:7 46:1,20 61:7

**applying** 12:18 31:5 42:23

**approved** 26:15

**area** 55:7

**assessments** 60:13

**assistant** 43:15

**assume** 11:24 25:2 37:10

**attached** 51:10

**attention** 58:1

**Attorney's** 5:13

**attorneys** 5:3

**audio** 4:24 6:16

**audio/video** 5:1

**authority** 9:4 15:9,11 16:4,17, 22,24 20:19 27:16 29:22 30:17 31:10 52:12 53:7

**automatic** 25:20 30:23 31:6 49:14

**automatically** 49:8

**aware** 12:11

### B

**B-O-W-D-E-N** 4:22

**back** 9:3 15:12,13 33:4 45:4 46:9,14,16,18,24 47:1,7 50:4 43:21 44:1 49:24 50:9,16 51:9,19 52:14,22 54:25 55:6 56:13,17 58:18,20 59:6,8,11,14,19 61:21 62:1,13

**background** 8:1,19 9:8 10:5 11:6 12:25 13:24 14:21 23:3 26:16,21 27:5,15 28:19 29:17,18 30:9 31:8 32:5 33:25 34:23 38:20 39:7 45:20 49:22 53:25 54:5 55:13

**backgrounds** 7:23 9:5,14

**based** 9:13 12:7 21:12 31:8,21 33:24 60:19

**basically** 27:24

**basis** 8:13

**batches** 46:17

**battery** 14:22

**bear** 39:18 43:14

**bearing** 28:23

**began** 53:24

**begin** 5:20 9:16

**beginning** 5:5 6:6,19 42:16

**behalf** 5:10,13

**Ben** 5:11 42:16

**bigger** 57:18

**bit** 11:5 47:23 48:3,6,9,17

**board** 53:11,13

**body** 58:11

**bold** 25:19

**borne** 40:13

**bottom** 18:13,14 25:19 26:14 48:18

**Bowden** 4:9,13,20 5:13 19:17, 18 48:8 55:11 62:17 63:3

**bowdenj@reno.gov.** 63:5

**break** 7:5 32:20 33:9

**breaks** 7:3

**bring** 41:3 56:25

**built** 37:21

**bunch** 25:5,15

**Busby** 5:7,17 16:20 17:16,22 18:1,9 19:2,7,12,14,16 24:7 26:11 32:2,12,15,23,25 33:7,23 34:9,16,22 35:5,14,20 36:4,18 37:13,18 38:3,8,19 40:18 42:7

**button** 56:25

### C

**call** 23:21 24:11 33:14 40:12 41:13,25 42:2 50:8

**called** 24:8,12 51:19

**Calls** 35:3 36:1 37:25

**camera** 48:8 58:11

**candidate** 14:8 15:20 16:7 17:11 18:17 26:24 27:13 29:20 31:14 34:19 37:6 45:10,16,23 51:24 52:10,20 53:2,5 55:19 58:16

**candidates** 9:18 14:14 29:5 39:20 46:5,17 47:2 48:23 52:13 53:10 61:15

**capacity** 36:8

**captain** 9:6

**Carrie** 59:8

**case** 5:24,25 6:16 12:23 15:24 21:4 23:20 27:14 29:1 39:24 42:17 44:22 53:2 59:1 62:9

**cases** 38:22 39:1

**CDM** 25:9

**chain** 8:25 9:6 46:11

**chair** 44:6

**chance** 33:8 43:18 62:4

**changed** 8:16,22,23 9:2

**characterization** 34:11

**characterize** 23:24

**charge** 25:10

**charged** 16:21

**check** 53:25 54:5

**checks** 60:14

**Chief** 15:14,16,19

**choose** 62:6

**Christensen** 58:8

**Churchill** 5:11 22:8,15 33:15 34:7,12 42:17 49:21 50:22,25 51:4,13,24 52:7 54:17,18

**circumstances** 23:9 39:9

**city** 5:13 47:19 53:23 61:14

**civil** 5:25 9:12 45:5,8 46:2 48:24

**clarification** 19:9 35:16

**clarifying** 35:11

**clear** 6:17 17:10 18:11 23:19 50:7 51:3 53:20 58:10

**click** 56:21,25 57:4,7

**closing** 61:24

**coffee** 32:24

**command** 8:25 46:12

**comment** 62:6

**commonly** 5:21

**communicated** 24:15

**community** 14:17

**complaints** 60:15

**complete** 6:19 7:4 46:3

**computer** 20:7 57:4

**concluded** 27:24 28:1,2

**concludes** 62:16

**conclusion** 38:1

**conduct** 8:1,19 36:20 49:8 58:15

**conducted** 8:10 21:24

**conducting** 9:8,20

**conference** 4:10

**Confidential** 19:10

**consideration** 16:10

**considered** 48:23 49:9 52:12

**consist** 10:7

**consists** 10:8

**contact** 9:16,19,24 10:11,13,17, 18 29:18 30:9 62:14

**contacted** 27:21

**contacting** 9:13 10:8

**contents** 33:16

**continue** 53:7

**continuous** 46:19

**Contributed** 25:12

**control** 54:11

**conversation** 22:12 25:1 33:17, 22 40:17 41:19 50:21 52:2

**conveyed** 41:24

**convinced** 41:2

**cooperate** 58:13

**copies** 11:17 20:8

**copy** 20:3,6 47:18 51:8 62:10,19, 22

**correct** 8:3 11:7,25 15:18 19:14 26:16,17 36:9 38:14 43:1,6 49:9, 10,15,18 51:6,7,10,11,16 54:1

**correctly** 14:16

**correspondence** 60:13

**corroborate** 23:16

**County** 5:11 22:9,15 33:15 34:12 42:17 49:21 50:22,25 51:4, 13,24 52:8 54:17,18

**County's** 34:7

**couple** 42:15 62:4

**court** 6:11

**coworkers** 40:2

**create** 6:17 23:2

**created** 5:1

**crimes** 13:19

**criteria** 25:20 30:23 31:6,13,15 37:6 39:19

**current** 7:9,21

**cut** 48:7,12,18

**D**

**D-U-N-A-G-A-N** 63:1

**database** 61:14

**date** 4:6 45:19,21 59:23,24

**dated** 19:11 45:1

**dealing** 9:3

**Dear** 18:5

**decide** 46:21

**decision** 15:9 16:3,4,17 17:21 23:5 27:17 28:24 29:15 30:4,5,18 31:10 36:16 39:18 60:14

**decisions** 15:8 52:13

**deemed** 58:14

**deeper** 10:4,6

**defendant** 57:15

**Defendants** 5:11

**delinquency** 25:13

**department** 7:11,22 8:3 10:24 11:21 20:23 25:20 55:15,17,22

**depending** 13:17

**deponent** 4:11

**deposition** 4:1,4,8,11,18,23,25 5:14,22,23 6:6,7,13 18:19 19:19 33:1,4 44:18 47:14 48:7,11,15,17 50:5 54:23 56:1,21,24 57:3,7,19, 22,24 62:2,11,16,17,21,24 63:2, 6,8,11

**deputies** 41:3

**deputy** 15:14,16,19 22:19 36:21 40:25

**describe** 9:7

**description** 23:24 47:18,21 48:22 60:19

**destroyed** 20:9,14,20

**destroys** 61:4

**detailed** 45:24

**detained** 58:9

**detective** 4:9,13 5:13,18 7:6,10, 19,25 18:14 19:17 26:16 33:8 36:9 38:4 42:9,13 43:18 44:21 45:12 47:17 48:8,21 50:21 52:11 55:11 57:13 58:1 59:7 62:1,17 63:2

**determination** 15:17 30:2,14 31:5,20,21 32:7 39:14

**determine** 30:22,24 31:14 61:9

**determined** 53:6

**differences** 10:16

**difficult** 8:11

**direct** 58:12,21

**directly** 9:3

**discover** 14:8,20

**discovered** 23:7

**discuss** 50:8

**discussed** 35:22

**discussing** 22:22

**discussion** 50:25

**discussions** 16:2

**dishonest** 49:8 51:25

**dishonesty** 49:1 51:25

**display** 43:22

**disqualification** 49:14

**disqualified** 26:8 27:8 29:6,12, 20 61:7,10,17

**disqualify** 14:2 17:2 29:8 37:3 39:19 43:4 58:16

**disqualifying** 13:4,11 14:6,20 15:6 16:7 17:5,11 27:20 31:2 32:9

**dive** 10:4,6

**document** 18:25 19:17,19 24:20,22 33:15 34:7,18 35:18 39:22 45:9 48:14 55:4,12,16 56:5,20 57:4,5,9,14 59:2

**documentary** 11:12

**documentation** 11:14 18:23

**documented** 33:21 51:14,20 52:5

**documents** 19:22,24 21:3 55:13,19,22 60:4,10,20

**domestic** 14:22

**Donohoe** 26:15 31:16

**drug** 13:18

**drugs** 14:22

**due** 37:21

**DUI** 16:6,10 17:11 25:6 52:11

**Dunagan** 5:12 16:14 17:14 18:7 19:6,9,13,15 24:2 31:24 32:19 35:7,11,15 36:2 37:9 38:5,17 44:14 47:22,25 48:13 55:3,7,10 56:10 59:17 62:23 63:1

**E**

**E-DEPOSITIONS** 4:5 5:2 6:14 62:3,14

**earlier** 27:24 33:13 46:15

**early** 5:20

**education** 26:22

**effectively** 34:1

**electronic** 4:24 20:3

**eligible** 31:14

**Eloisa** 56:3,6

**email** 43:21 44:21,24 45:1 50:9 60:7,25 63:3

**emails** 57:10

**employed** 26:9

**employee** 23:25

**employer** 10:15 12:9 15:2,6 23:2 26:6 31:22 35:24 37:5

**employers** 10:11,20 11:8

**employment** 8:3,14 10:9,10 12:10,25 13:18 14:2,25 18:6 22:7 27:7 34:12 37:11,12 38:23 39:9 40:24 43:5 48:25 49:9,20 50:7 51:5,15 53:22 57:17 60:11 61:4

**enforce** 27:8

**enforcement** 10:16 11:7 27:19 28:20,23 29:6,11 34:2 52:21

**entire** 39:8

**entitled** 12:8 38:11

**Erwine** 4:2 5:8 18:5,20 21:12 22:18 23:17,24 24:9,12 28:11,20 33:5 34:19 36:8 40:12,25 41:2,7, 22 43:7 44:24 49:20 51:5,19 53:2,23 54:19 55:25 60:22

**Erwine's** 19:22 21:4 34:12 45:3 57:16 60:5

**essentially** 8:20 13:25

**estimate** 8:9

**et al** 4:3 33:6

**evaluate** 38:13

**evaluated** 31:16

**evaluating** 39:20

**evaluation** 26:23

**evaluations** 60:12

**eventually** 44:17

**everybody's** 40:1

**evidence** 11:12 38:12 41:5

**EXAMINATION** 5:16 42:11 55:9 57:11 59:5

**examples** 14:19

**exciting** 57:10

**exclude** 34:1

**exclusion** 35:22 37:4

**excuse** 50:6

**exhibit** 17:23,24 19:3,4 21:16 27:4 32:13,14 33:9 35:22 36:20 37:22 40:20 42:20,21 43:22 44:17,19 47:13,15 50:4,20 51:10, 15,21 52:1 53:21 57:20,21,23 58:2 59:15 60:3

**exhibits** 44:7

**exonerated** 39:13

**experience** 22:7 26:23 27:6 33:24 40:24 50:7 51:15 53:22

**explained** 23:13

**explaining** 6:7

**extraneous** 16:12

**F**

**face** 48:11,18

**fact** 27:11 37:25 52:10

**factor** 27:13

**factors** 13:21 16:12

**facts** 15:8 16:23 23:6,9 30:17 31:12,15

**failure** 58:13

**fair** 21:9,10,22 31:19 40:6

**fall** 31:11 35:21

**familiar** 11:2 37:20 47:20 48:1

**February** 19:13 50:5,6 53:25 58:4

**Felony** 14:22

**few-minute** 32:20

**figure** 56:18

**file** 11:24 19:22,25 20:2,13 34:1, 25 37:23 38:21 41:6,17 51:5

**files** 11:15,17,20 28:19 39:1,6

**fills** 45:24

**find** 12:4 13:3

**firefighter** 12:19

**firm** 5:4

**focus** 58:1,5

**follow** 54:24 59:7

**footage** 58:11

**force** 36:21

**form** 19:1 33:21 49:24 52:14 55:25 56:2 58:21

**forward** 13:7 15:10 16:18

**foundation** 35:3 36:1 37:8 38:15 40:17

**frame** 55:20 60:5,23

**full** 4:19

**future** 62:7

**G**

**gal** 20:24

**gave** 22:9 24:3 51:15

**general** 9:7 37:20

**generally** 6:6 26:22 33:16

**generate** 31:15

**give** 4:15 8:9 10:21 11:8,9,14 12:17 14:18 30:14,16 40:6 41:7 43:16 61:24

**glad** 6:23 40:19 43:22

**good** 5:7,18 7:5 27:13 43:14

**gov** 63:7

**grab** 32:24

**Great** 7:8,18 18:16 19:21 21:22 47:12 62:13

**guess** 41:20 61:2

**guide** 13:13

**guidelines** 13:14 25:21 26:2 30:24 31:7

**guy** 36:11

**guys** 5:14

**H**

**ha-ha** 50:11

**half** 36:22 48:11

**Hall** 58:7

**hand** 4:14

**handwritten** 12:2

**happen** 16:3

**happened** 21:1 23:10 41:8 42:3

**happening** 23:6

**hard** 20:6,8 29:3

**head** 49:10

**hear** 7:6 15:3 18:16 36:22 41:6

**hearing** 23:1 39:14

**heavily** 13:22

**held** 39:14

**hey** 15:25 39:14

**hire** 15:25 16:18 27:16 29:16,24 30:15 36:12,17 46:22

**hired** 9:5 16:1 17:2 21:12 28:25 29:3 30:3 34:2 45:18 55:15,19

**hires** 8:16

**hiring** 9:4 14:14 15:8,11 16:17, 22,24 29:7,22 30:17 31:10 34:25 37:6 46:16,19 47:3 52:12 53:7, 11,12

**history** 13:19 21:14 25:24,25 26:4 31:1 32:10 35:21 37:4 58:17

**hold** 43:24

**HR** 46:1

**hypothetical** 34:5 35:4 37:8,25 38:16 39:24

**I**

**ID** 4:12

**idea** 40:10 47:1

**identification** 17:24 19:4 32:14 44:19 47:15 57:23

**identify** 5:4

**immediately** 14:20

**important** 6:17 14:13

**impression** 23:2

**Improper** 34:4 35:4 37:8,24 38:16

**inaccurately** 38:23

**incident** 58:3

**include** 29:21

**independent** 21:2

**indicating** 44:24

**indication** 41:21

**inform** 18:5

**information** 11:10 12:17 14:1,5, 7 27:19 29:22,23 31:9 32:3,4 40:1 51:12,14 62:14

**informed** 58:8

**initial** 20:8 53:12,25

**inmate** 41:2

**instance** 13:3 31:17

**insubordination** 58:14

**interest** 47:7 55:8

**internal** 56:7 60:13

**interrogation** 58:10

**interview** 53:4,9,12

**introductory** 21:23

**investigating** 22:20 41:1

**investigation** 9:9,17,21,22 11:20 13:1,6,25 14:5 21:24 23:20 26:16,21 27:5,15,24 28:19 29:18 30:9 31:8 32:5 38:21 39:8 40:13 49:23 55:13 58:3,7,13

**investigations** 8:2,10,20 11:7 33:25
**investigator** 23:3 34:24
**involved** 9:8,22
**involving** 48:25
**issued** 58:8 59:21,24

J

**J-E-R-R-Y** 4:21
**j@reno.gov** 63:9
**jail** 22:19 41:1
**January** 7:14
**Jerry** 4:9,20 18:8 62:17
**job** 13:12 14:13,15 31:6 40:7 47:18,20 48:22
**jobs** 13:5
**judgment** 30:25
**judicial** 49:2
**July** 53:24
**June** 25:8
**juvenile** 25:9

K

**Katherine** 5:10 62:18
**Kathy** 43:21 47:22 50:9 56:13 59:8
**kind** 8:12 13:10,13 37:2,3 40:13 41:23 52:4 53:10 60:10
**knowledge** 52:12

L

**Lack** 35:2,25 37:8 38:15 40:17
**landed** 54:9
**language** 21:23
**Las** 27:8,20 28:6,10 29:11
**lateral** 44:25 47:18
**law** 6:11 10:15 11:7 12:8,19 27:7,19 28:19,23 29:6,11 34:2 52:20
**lawsuit** 57:15
**lead** 34:18
**learn** 58:19
**learned** 46:7 49:19
**legal** 25:11 37:25
**letter** 42:22
**leveled** 40:11
**lieu** 48:23 49:7
**Lieutenant** 26:15 31:16
**list** 9:14,18 27:15 31:13 45:17,19,20,21 46:4,8 54:12
**listed** 25:6 32:10
**listening** 5:8
**listing** 31:1
**LLC** 4:5 5:2
**located** 4:5
**long** 6:3 7:12,18 8:5 20:16,17 42:4 50:21,23
**longer** 20:25
**lot** 8:11 12:15 21:6 47:6
**loud** 18:8
**Luke** 5:7 19:6 32:22 35:12 44:7 54:23 56:14

M

**made** 32:8 36:7 39:14
**main** 21:11
**maintains** 61:15
**make** 11:16,19 14:14 15:7,15,20 16:25 17:3 23:5 27:16 31:4 36:16 46:3 57:18 62:5,11
**makes** 15:9,16 16:17 17:21 30:17 31:10
**making** 16:22 30:14
**manager** 9:5
**March** 42:22 46:9,14 47:1 59:24
**mark** 5:12 44:17 47:13 55:1 57:19,21 62:21,25
**marked** 17:23,24 19:4 32:14 44:19 47:15 57:23
**materials** 60:15
**matter** 4:2 12:8 33:5
**meet** 53:13
**memoranda** 60:13
**memorandum** 32:5 33:25 40:21 50:5 51:9 57:16
**met** 52:7
**Michael** 4:2 5:8 33:5 43:7 53:2
**mind** 23:3
**minor** 25:13
**minute** 32:17
**minutes** 32:25
**Miranda** 58:9
**misconduct** 38:10,24 39:13 48:25
**missing** 26:19
**Misstates** 37:16 40:15
**moment** 43:25
**morning** 5:7,18
**motor** 25:15
**move** 15:10 16:18 48:8 53:13

N

**named** 52:23
**names** 9:19 24:9 45:17
**nature** 10:1 14:23
**negative** 15:1,5
**negotiations** 49:25
**neighborhood** 10:10
**net** 54:15
**Nevada** 4:6
**nevermind** 52:21
**Nods** 49:10
**normal** 55:18,21
**noted** 27:7 29:10,15 58:17
**notes** 11:19,23 12:3 24:19,21,25 28:15
**noticing** 5:6

**NRS** 4:11 11:2 12:7 13:13

**number** 32:9 42:20,21 44:18 47:10,13 50:4,20 51:10

**numerous** 28:22

**O**

**oath** 6:10

**object** 49:24 52:14 58:18,20,21

**Objection** 16:13 17:13 24:1 26:10 31:23 33:18 34:4 35:2,25 36:14 37:7,16,24 38:15 40:15 49:24

**objections** 34:13,20

**observe** 11:19

**obtained** 27:18 47:19

**occupation** 7:9

**October** 4:6 45:1

**office** 5:13 49:21 54:18 59:25

**officer** 4:1,4,18,23 5:14 9:10 12:18 33:1,4 34:3 36:8 38:9 43:5 44:25 45:11 47:18 48:7,11,15,17 54:23 56:21,24 57:3,7,19,24 58:7 62:16,21,24 63:2,6,8,11

**officers** 11:7 37:22 38:22

**official** 4:25

**online** 45:13,22 46:1 56:3

**open** 8:16

**operation** 25:15

**opportunity** 32:21 41:23

**organization** 14:9

**outcome** 31:16

**Overbroad** 33:19 34:4 35:2

**P**

**pages** 19:7 21:16

**paper** 20:3

**paragraph** 42:21 58:2,5

**paragraphs** 21:23,25

**Parks** 5:10 16:13 17:13 24:1 26:10 31:23 32:20,24 33:18 34:4, 13,20 35:2,25 36:14 37:7,16,24 38:15 40:15 42:12 43:24 44:2,6, 11,15,20 47:12,16,24 48:4,16,20 50:3,11,17,19 52:19 54:21 56:12, 14,18,23 57:2,6,8,12,21,25 58:19,24 59:3,10,13 60:4 61:25 62:20

**part** 11:20 22:7,24 25:25 27:1 28:4,5 29:17 30:8,11,12,25 32:4 35:3 45:15 52:12 58:6

**parties** 4:10

**party** 5:5

**pass** 42:10

**past** 10:4

**PD** 43:3 45:11

**peers** 22:20 41:2

**pending** 7:4

**people** 9:13,14,19 14:15 29:2 46:7,20

**Perfect** 48:19

**perfunctory** 21:23

**period** 8:18 17:17 46:14,21

**permanently** 27:8 29:6,8,12 43:4 61:7,9,16

**permits** 12:14

**person** 9:11 13:6 14:1 15:10,25 16:11,18,19,21,23 17:1 31:2 39:15 40:6 49:6 52:8 53:9 54:4

**personal** 10:9

**personnel** 60:16

**persons** 43:4

**phone** 10:14,18 23:21 24:23,24 27:22 33:14 40:12 41:13,19 42:2

**phonetic** 56:3

**physically** 10:24

**piece** 24:12 51:20

**places** 38:22

**Plaintiff** 5:8

**play** 26:23

**plug** 31:15

**point** 10:4 14:4,7 39:13 45:1 53:4 55:20

**police** 7:10 8:3 9:9,21 10:20,24 12:10,18 14:12 16:7 25:20 34:19, 23 36:8 37:6,19,21 38:9 43:5 44:25 45:11 47:18 55:15,22 61:15

**policies** 39:17

**portion** 48:22

**position** 42:24 43:8 44:25 45:11,16 49:17 53:23 58:16

**positive** 34:11

**positively** 34:19

**potential** 53:10

**practice** 55:12

**preclude** 42:23

**prescreen** 9:25 53:18

**prescreening** 45:21,23 46:6

**present** 5:3 15:8 16:16 23:6 38:12

**presents** 16:23

**pretty** 45:12 46:10

**previous** 26:5 31:22 35:24 37:5 61:16

**prior** 4:11 26:22 50:25 58:9

**proceed** 23:21

**proceeding** 5:6

**proceedings** 62:8

**process** 6:7 8:19 11:20 26:21 27:9,20 29:7,12 30:11,12 37:21 38:11 45:15,20,23 46:3,10,16 47:3 53:8

**processes** 8:24

**processing** 60:12

**produced** 44:22 57:14 60:21,25 62:3

**professional** 24:5

**prolong** 52:23

**property** 20:8

**prospect** 9:9 12:23 61:6

**prospective** 9:9

**prospects** 8:2

**protections** 37:21
**provide** 6:15 15:16 32:4 62:14
**provided** 31:13 51:8,13
**public** 12:9,24
**pull** 57:8
**pulled** 57:4
**pushy** 42:7
**put** 9:14 17:4 31:9
**putting** 14:9

**Q**

**qualifications** 45:3
**qualified** 14:1 40:7
**question** 6:22,24 7:4,5 15:3 23:8 29:24 30:1 31:25 34:15 35:12 38:7 39:3 56:15 62:8
**questioning** 58:6
**questions** 6:19 18:4 21:19 32:18 41:10 42:15 54:22 55:2 59:4 61:22
**quick** 18:3 42:20 43:14

**R**

**raise** 4:14
**re-offered** 49:20
**reach** 12:21
**read** 12:11 18:3,8 21:18 22:25 32:19 33:16 42:25
**ready** 21:20 62:4
**real** 18:3 43:13
**reapplied** 43:8,12
**reason** 21:12 61:17
**rebut** 41:23
**recall** 6:2,3 15:24 18:17,24 22:12,20,22 23:21 24:8,11 25:2,3,4 27:3,18,21 28:9,10,17,18 33:13,20 41:15,22 42:4 43:10 45:2 46:13 47:4,5,8,10 50:21,23 51:14 52:2 53:1,3 54:16
**receive** 28:21 31:9 62:10
**received** 16:11 52:10
**receiving** 6:5 28:18
**recently** 56:8
**recess** 33:3
**recognize** 59:20
**recollection** 21:3
**recommend** 28:24
**recommendation** 15:15,20 17:1,3 22:10 24:4 26:5 31:22 32:8,9 35:23 37:5
**recommendations** 16:22
**record** 4:2,25 6:18 33:2,5 61:8,13 62:18 63:12
**recorded** 4:9 6:14 62:17
**recording** 4:24 5:1 6:16
**records** 10:19,22 11:1 12:4,8 18:20 20:23 21:13 23:15 60:12,14,16,17 61:4
**recruit** 9:21 10:20 12:10 27:11
**recruits** 8:13
**reference** 12:17 40:5 60:14
**references** 10:9 13:18 15:1,5
**referring** 56:7 60:8
**reflect** 33:16
**reflected** 28:15
**reflecting** 12:3
**refuting** 38:12
**regret** 18:5
**reinstated** 49:1,13,16,17
**reject** 15:20
**rejected** 27:12 28:22 29:2
**rejection** 25:20 30:23 31:6 42:23
**related** 10:20 18:20 51:5
**relates** 11:6 49:25
**relating** 49:3 57:16
**relatives** 10:10
**relevance** 35:25 58:22
**relevant** 29:23 30:2,6,8 31:20 49:22 60:16
**remedy** 49:2
**remember** 6:1,5 21:7 28:8 42:3 53:15
**Reno** 4:6 5:12 7:10 8:3 25:19 43:3 45:11 53:24 55:15 61:3
**Reno's** 47:19
**repeat** 14:3 29:25 32:1 34:14
**rephrase** 6:23 12:22 40:19
**report** 27:6 29:21 30:7 31:20 32:10
**represent** 5:5 42:16
**representing** 5:8
**request** 10:19 11:1 41:4
**requested** 60:10
**requesting** 11:11
**required** 32:4 45:17
**resignation** 49:3
**resigned** 48:23
**resigns** 49:7
**respect** 40:16 52:13
**response** 60:21
**responses** 36:22
**responsible** 20:24
**restrictive** 13:16
**result** 49:1
**retention** 20:9,15,23 55:4,12 60:19
**retired** 56:8
**returning** 26:21
**review** 12:8,24 21:13 32:17,21 42:1,2 46:16 55:25 62:5,11
**reviewed** 19:19 21:3 26:15 41:22 46:1,2 47:2
**reviewing** 13:5 45:2
**reviews** 60:16 61:5
**Road** 4:5
**Robinson** 15:14,16,19
**role** 7:21 26:22

**rolling** 8:13 46:15

**row** 25:11

**RPD** 7:12 12:10,23 13:12 14:2 15:11 17:2,12 18:20 20:2 21:12 26:9 27:13 28:25 31:6,13 34:3 38:10 39:20 43:8 45:16 55:13 58:16 59:21 60:5,22 61:4

**RPDS** 37:6

### S

**safety** 12:9,24 54:15

**Sandhill** 4:5

**schedule** 60:20

**scope** 38:1 58:21

**screen** 43:13,17,22 56:22 57:1 59:9

**search** 14:5

**secretary** 56:7

**seek** 43:5

**seeking** 12:10

**sees** 57:9

**sentence** 22:17 40:23 42:21 58:12

**separate** 24:21

**Sergeant** 58:7

**service** 9:12 45:6,8 46:2 48:25

**set** 5:15 39:8

**setting** 5:19

**settlement** 49:25

**share** 12:19 43:13,16 44:2 56:22 57:7

**sharing** 50:15 59:9

**sheriff** 22:8,14,18,23 23:8,11,16 25:1 27:25 28:2,5 33:14,15 40:11,16,25 41:6,24,25 50:22,24 51:13,18,19,23 52:7,8

**sheriff's** 23:24 49:21 54:18

**shit** 24:12 51:20

**short** 19:1 33:21 55:25 56:2

**shot** 40:7

**show** 4:12 47:13 56:19

**shown** 60:4

**shred** 56:5

**shredded** 55:16

**sic** 24:3

**side** 38:13 41:8

**sign** 17:7

**signature** 18:13,14

**signing** 59:23

**sir** 21:21 29:17 30:16 34:15 36:15 39:21 42:1

**sit** 44:6

**situation** 13:17 39:21

**solemnly** 4:14

**someone's** 14:21 34:1 39:9

**sort** 12:3 30:24,25 38:11 46:16 51:5 54:3

**Sound** 7:5

**speak** 34:7 35:9 61:19

**SPEAKER** 44:5,9,13

**speaking** 28:5,6 53:1 54:16

**specific** 47:10

**specifically** 9:1 31:21

**specifics** 41:15

**speculate** 29:4

**speculation** 35:3 36:1

**spell** 62:25

**spelled** 4:21

**spelling** 4:19

**spent** 22:19 41:1

**spoke** 22:8 27:25 28:2,10,16

**spoken** 50:24

**Staats** 4:3

**standard** 5:21

**start** 7:15 9:13 46:6 54:5

**state** 4:19

**stated** 58:7

**statement** 25:19 37:3

**states** 4:3 22:8,18 26:5,14 27:6 33:6 36:20 40:24 48:22 60:11

**statute** 11:2,6 12:7,14,15

**step** 9:24 53:14

**steps** 9:8,22

**stipulation** 4:10

**stop** 13:6 50:15

**story** 38:14 41:8

**stuff** 9:12 10:10,22 25:6,9 27:16 46:25

**subject** 30:23 31:6 58:9,10

**subjective** 31:4

**submit** 30:17 35:18 47:17 57:13

**subpoena** 19:6 38:2 59:21 60:10,21,24

**subsequent** 40:13

**substantial** 48:25

**suggests** 49:6

**suite** 4:6

**supervisors** 40:2

**supposed** 17:8

**surrounding** 23:9 39:9

**system** 56:3

### T

**talk** 12:17,20 57:15

**talked** 50:25 51:1

**talking** 21:25 24:5 43:9 58:3 60:24

**telephone** 50:8

**telling** 23:16

**ten** 7:20 8:6,8 61:6,8

**ten-year-old** 16:6 17:11

**terminated** 48:24 49:7 51:25 52:20

**termination** 48:24 49:3,7

**terms** 8:24 9:7 17:3,4 28:1 43:4 46:6 51:12 58:17

**test** 9:12

**tested** 54:8

**testified** 27:23 51:4

**testifying** 6:11

**testimony** 4:15 37:17 40:16 62:2,5

**testing** 46:24 60:15

**thing** 33:20,21 39:15 41:16 45:25 46:6 52:4

**things** 8:22 9:25 13:10,20 14:19, 23 20:7 39:5 41:23 55:4

**time** 4:7 13:2 15:14 17:17 20:5 22:15,19 23:11 33:2,6 36:22 41:1 42:8 45:9 46:4 53:4,17 54:4 55:20 56:4 59:1 60:5,23 62:15 63:12

**times** 8:14 12:15

**today** 5:19 6:10 15:12 18:19 51:1 57:16

**Today's** 4:6

**told** 29:13 40:16 51:24 53:7

**Tom** 17:21

**ton** 22:19 41:1

**top** 19:10 44:12

**training** 60:15

**transcribe** 6:14

**transcript** 4:25 6:15 62:2

**transitioning** 20:7

**Trespassing** 25:9

**Tribe** 52:24 57:17

**trotter** 5:11 23:8,13 25:1 27:25 28:3,5 33:14 40:11,16 41:6,24,25 42:16 51:23 52:8

**true** 23:22 58:11

**trust** 14:15

**trustee** 43:15

**truth** 4:15,16

**truthfully** 58:14

**turn** 22:6 40:19

**Twenty-five** 7:13

**type** 39:1 58:15

**typical** 54:3

**typically** 11:16 12:2,20,21,24 13:13 38:10

### U

**Uh-huh** 44:23

**ultimately** 15:7 16:3,16 17:21 31:10 32:7

**understand** 6:10,22 30:12 31:25 38:6

**understanding** 12:6,13,16 55:11

**understood** 6:25

**unfavorable** 22:9,10 24:4 26:5 31:22 35:23 37:4

**UNIDENTIFIED** 44:5,9,13

**unit** 27:5

**United** 4:2 33:5

**unjustifiable** 36:21

### V

**Vague** 16:13 24:1 31:23 33:18 37:7

**Vegas** 27:8,20 28:7,10 29:11

**vehicle** 25:15

**verbatim** 12:11 52:3

**verifications** 60:14

**video** 4:10 6:16

**video-recorded** 4:8

**view** 11:15,17,21

**viewing** 58:10

**violation** 39:16

**violations** 25:15

**visual** 4:24

### W

**waivers** 9:25

**warning** 58:9

**Washoe** 52:24 57:17

**water** 41:3

**website** 47:19

**weeks** 62:4

**weigh** 13:21 27:12

**weight** 30:13,16

**weighted** 30:20

**weights** 30:21

**Westbrook** 52:24

**witnessed** 6:1

**wondering** 45:2 47:7

**work** 4:4 8:12 14:12 21:14 25:23, 25 26:4 31:1 32:9 35:1,21 36:12 37:4,19 58:17

**worked** 7:12 55:21 57:10

**working** 7:15 56:4

**works** 52:24 53:18

**worst** 50:17

**would've** 20:6 47:2 51:20 52:1,4

**Wow** 7:15

**write** 25:21 29:9 36:16

**writing** 24:23

**written** 24:14,17

**wrong** 38:24

**wrongfully** 38:23

**wrote** 18:23 25:25 42:3 56:2

### Y

**year** 8:15 46:23,25

**year's** 47:3

**years** 7:13,20 8:6,17 21:8 55:16 61:5,6,8

### Z

**Zach** 52:24

**zoom** 5:9 26:20 47:22